**FEDERAL DEPOSIT INSURANCE CORPORATION**

v.

**ERNST & WHINNEY.**

No. CIV–3–87–364.

United States District Court, E.D. Tennessee, N.D.

May 13, 1991.

Melvyn I. Weiss and Jared Specthrie, Milberg Weiss Bershad Specthrie & Lerach, New York City, Harry S. Mattice and Raymond R. Murphy, Miller & Martin, Chattanooga, Tenn., for plaintiff, FDIC.

Robert R. Campbell, Hodges, Doughty & Carson, Knoxville, Tenn., Howard A. Ellins, David Kolb, and James F. McMahon, Davis, Polk & Wardwell, New York City, Michael P. Carroll and Andrew Heaton, Davis, Polk & Wardwell, Washington, D.C., for defendant, Ernst & Whinney.

## ORDER

JOE A. TILSON, United States Magistrate Judge.

This matter has been referred to the undersigned by order of this Court for resolution of all nondispositive pretrial matters [Doc. 275].

This matter comes before the undersigned upon the motion of Ernst & Whinney to compel production of documents and answers to deposition questions [Doc. 539], the FDIC's memorandum in opposition thereto [Doc. 569], Ernst & Whinney's supplemental memorandum [Doc. 578], the FDIC's supplemental memorandum [Doc. 580], and the second supplemental memorandum of Ernst & Whinney [Doc. 579].

The documents which are at issue are certain criminal reports and referrals made by the FDIC regarding suspected criminal acts at Butcher-related banks, including United American Bank, Knoxville. Ernst & Whinney seeks these documents on the basis that they are relevant to its defense that losses for which the FDIC has sued Ernst & Whinney were caused by fraud, not by Ernst & Whinney's audit. The FDIC has opposed the production of these documents on the basis that they are protected by the attorney-client privilege.

It is clear that the documents in question are the types of documents that are covered by the attorney-client privilege. These documents were prepared by the FDIC for use in consultation with the FDIC's attorneys, who are, in these kinds of matters, the United States Attorneys. Therefore, as found by Magistrate Judge Murrian in his earlier rulings, these documents are the types of documents protected by the attorney-client privilege, and Ernst & Whinney is not entitled to them unless the attorney-client privilege is waived. It is undisputed that all of the reports at issue were furnished by the FDIC not only to the United States Attorney's Office, but also to other state and federal bank regulatory agencies. In addition, it is undisputed that some of these documents have been produced as exhibits at depositions; some of them have been produced inadvertently during the massive document production in this case; and some of these reports have been produced in related cases. Ernst & Whinney argues that the attorney-client privilege was waived as to all of these reports when the FDIC furnished these documents to other regulatory agencies. In the alternative, it argues that the privilege has been waived as to each document that has been produced by the FDIC, whether inadvertently or otherwise.

Since it is really quite clear that the attorney-client privilege attaches to these documents, the real issue before the undersigned at this time is whether or not the privilege has been waived, either by furnishing the documents to other state and federal regulatory agencies, or by inadvertently furnishing them in response to requests for production, or by filing them as exhibits to depositions.

█ It is correct that the general rule is that any disclosure by a client of confidential attorney communications will waive the attorney-client privilege. However, the undersigned is not willing to hold that the FDIC's production of these reports to other banking regulatory agencies has waived its privilege. The production of these documents to other agencies by the FDIC was not done indiscriminately. Here, the evidence clearly shows that the FDIC produced these documents only to other agencies which had an absolute commonality of interest with the FDIC in dealing with potential criminal acts which occurred at these banks. The undersigned finds that it would be very counterproductive and chilling to hold that the FDIC waived its attorney-client privilege when it passed these documents on to other governmental agencies which clearly had an identity of interest with the FDIC as to these alleged criminal actions. If the FDIC was discouraged from having open communications with these other agencies relative to these alleged criminal actions because of a fear of waiver of its attorney-client privilege, the effects of such discouragement would be widespread.

As pointed out by the FDIC in its supplemental response [Doc. 580], the FDIC discloses these reports to other regulatory agencies in order to "protect and stabilize" the nation's banking system. To hold otherwise would seriously undermine the FDIC's ability to carry out this mandate. Therefore, the undersigned rejects Ernst & Whinney's argument that the furnishing of the subject reports to other regulatory

agencies so compromised the confidential nature of the reports as to revoke the attorney-client privilege. In fact, this sharing of information is nothing more than the taxpaying public would hope for and expect among agencies which possess the same identity of interest, as these do.

■ As to Ernst & Whinney's assertions that the privileged nature of these reports and referrals was waived by the FDIC's making these documents available to officers and directors of the banks involved, the undersigned finds that the FDIC did not, in fact, make the documents themselves available to these officers and directors. Instead, it appears that the FDIC merely advised officers and directors of involved banks of the facts underlying the criminal reports and referrals and which caused the reports and referrals to be made in the first place. Clearly, the facts underlying the reports and referrals are discoverable, and both parties to this litigation have so agreed. Therefore, it is apparent that the FDIC's discussion of these underlying facts with officers and directors has absolutely no effect on the maintenance of the attorney-client privilege as to the criminal reports and referrals at issue.

The next question of waiver involves the production of some of these criminal reports by the FDIC during the course of this litigation and in prior cases. In this regard, the undersigned will now address the specific documents which, in one manner or another, have been produced to Ernst & Whinney in this case, either in the course of discovery in this case or in related cases. In the opinion of the undersigned, there are five separate types of production at issue here. In addition, the undersigned will consider the David Meadows' letter, which contains information about criminal reports and referrals; but this letter will be considered separately.

I. The fourteen criminal reports and referrals inadvertently produced in this case (CIV–3–87–365):

■ As pointed out by Magistrate Judge Murrian in *FDIC v. Aetna Casualty & Surety Co.,*

The factors that a court should consider when determining whether the attorney-client privilege has been waived because of inadvertent disclosure are:

(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production;

(2) the number of inadvertent disclosures;

(3) the extent of disclosure;

(4) any delay and measures taken to rectify the disclosures; [and]

(5) whether the overriding interest of justice would or would not be served by relieving a party of its error.

Memorandum and Order at 6–7, *FDIC v. Aetna Casualty & Surety Co.,* CIV–1–85–797 (Jan. 28, 1988, E.D.Tn.), citing *Parkway Gallery v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 50 (M.D. N.C.1987).

It is undisputed that the fourteen documents in question were inadvertently produced to Ernst & Whinney in this case. It appears however that the FDIC has instigated and has followed quite extensive precautions to avoid disclosure of privileged materials; but even with these precautions in place, the FDIC did inadvertently produce these fourteen criminal reports and referrals. [Doc. 570, Affidavit of T. Glen Stanton]. The application of the balancing test as set out in Magistrate Judge Murrian's opinion in *FDIC v. Aetna Casualty & Surety Co., supra,* does not, in the opinion of the undersigned, weigh in favor of finding a waiver of the privilege. This is in light of the fact that approximately 2.3 million pages of documents have been produced by the FDIC in this case. The production of these fourteen documents does not indicate that the FDIC has been careless or reckless in its procedure for safeguarding these documents.

In addition, it appears that once the FDIC learned that these documents were in fact inadvertently produced, it objected to discovery regarding the documents and immediately demanded from Ernst & Whinney that they be returned. [Doc. 570, Affidavit of T. Glen Stanton]. Although these

documents may have been produced several months, or an even longer period, prior to the FDIC's assertion of a privilege regarding them, it does appear that as soon as the FDIC learned of the production, it acted promptly to retrieve these documents and to prevent further questions and discovery regarding them. Also, as both parties to this matter have agreed, the facts underlying the criminal reports and referrals at issue are discoverable by Ernst & Whinney in this case; it is only the impressions and opinions of the FDIC which are not. Therefore, it then appears that the overriding interests of justice would not be affected by relieving FDIC of its inadvertent production of these documents in this matter. Considering all of this in the context of the *Aetna* balancing test, in the opinion of the undersigned the privilege has not been waived as to the fourteen documents inadvertently produced in the instant case.

In addition, the FDIC has asserted that Paragraph 15 in the stipulated Protective Order entered on January 28, 1988 [Doc. 107] protects the waiver of privileges such as attached to these documents when such documents are inadvertently disclosed. Ernst & Whinney, on the other hand, asserts that this language does not apply to privileged documents but only applies to confidential documents. Ernst & Whinney filed the affidavit of Attorney Sarah A. Smith [Doc. 539], one of the attorneys who drafted the disputed Protective Order, to support its position. The FDIC filed the affidavit of Attorney Harry Mattice, Jr. [Doc. 581], one of its attorneys who participated in the drafting of said document, to support its position that it was the intent of the parties that the confidentiality non-waiver provision include privilege non-waiver protection. Obviously, it is not possible to resolve this conflict on the basis of what the parties intended. Assuming that all parties are being entirely candid with the Court, they apparently *intended* different things. Therefore, the undersigned must resolve this conflict by placing a reasonable interpretation on the words themselves.

In attempting to do this, even though the language contained in the January, 1988 Protective Order does not specifically address privileged documents, the undersigned finds that this paragraph does apply to and protect privileged documents. The language in the Protective Order states that:

> The inadvertent or unintentional disclosure by the producing party of Confidential Information shall not be deemed a waiver in whole or in part of the confidential nature of the information disclosed or as to any other information relating thereto or on the same or related subject matter.

[Doc. 107 at 7–8].

It is noted that the Sixth Circuit case of *United States v. Goldfarb*, 328 F.2d 280 (6th Cir.), *cert. denied* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964), lists confidentiality as an element of the attorney-client privilege. As a matter of fact, as pointed out by Ernst & Whinney, the element of confidentiality lies at the very heart of the attorney-client privilege. [Doc. 539A, Memorandum in Support of Ernst & Whinney's Motion to Compel Production of Documents and Answers to Deposition Questions, page 5]. Therefore, it seems to the undersigned that a reasonable interpretation of Paragraph 15 of the Protective Order is that since confidentiality is not waived by the production, then privilege is not waived either.

For these reasons, the undersigned finds that the attorney-client privilege as to these documents has not been waived and ORDERS that Ernst & Whinney return these fourteen inadvertently-produced criminal reports and referrals to the FDIC immediately.

II. The eight criminal reports and referrals that were produced in *FDIC v. C.H. Butcher, Sr.,* CIV–3–84–1020:

Previously in the case of *FDIC v. C.H. Butcher, Sr.,* CIV–3–84–1020, Magistrate Judge Murrian ruled that five criminal reports and referrals which were inadvertently produced in that case had to be returned to the FDIC. It is not apparent whether the eight criminal referrals at is-

sue here were the subject of this previous opinion by Magistrate Judge Murrian, or whether any of the eight were included in the five which were ordered returned. However, the undersigned finds that Magistrate Judge Murrian's opinion as to the criminal reports and referrals produced in that related case is persuasive here. This is because of the fact that Magistrate Judge Murrian applied the same balancing test in the *C.H. Butcher, Sr.* case which he applied in the *Aetna, supra,* case, and decided that the five inadvertently produced documents should be returned. Presumably, this same reasoning would be applied to the eight inadvertently produced documents at issue in the instant case which originated in the *C.H. Butcher, Sr.* case.

Therefore, in light of Magistrate Judge Murrian's opinion, as well as the fact that the parties in the *C.H. Butcher, Sr.* case had also agreed that the confidentiality of inadvertently produced documents would not be breached, as set out in a protective order similar to the Protective Order entered in the instant case [Doc. 581, Affidavit of Harry S. Mattice, Jr., Exhibit 1], the undersigned ORDERS Ernst & Whinney to return these eight documents to the FDIC, since the undersigned finds that the privilege as to these documents is not waived.

III. Criminal report and referral produced and designated as an exhibit to the deposition of Lila Hilton:

The undersigned finds that the criminal report and referral produced at Ms. Hilton's deposition is not relevant to the instant case and, therefore, declines to rule on whether or not the privilege as to this document has been waived.

IV. One criminal report and referral produced in the case of *National Union Fire Insurance Co. of Pittsburgh, PA v. FDIC,* CIV–3–84–458:

██ It appears from the facts stated in the Affidavit of Sarah Smith filed by Ernst & Whinney [Doc. 577], which facts are not disputed, that this criminal report was produced during a deposition of an FDIC witness without objection on the part of FDIC or without a claim of privilege by the FDIC. This is the only evidence which the undersigned has before him as to this criminal report. Obviously, this criminal report is in a different posture from those inadvertently produced in response to requests for documents. As a matter of fact, it is somewhat difficult to find that this report was inadvertently produced in the first place.

In any event, because the FDIC did not object to the production of this document and did not claim privilege at the time of its production at the deposition, under the balancing test referred to above the undersigned holds and finds that the privilege as to this document is waived.

V. The David Meadows letter:

██ Again relying on the Ernst & Whinney Affidavit of Sarah Smith [Doc. 577] as to the fact that this letter was produced by the FDIC in this case and related cases and was marked as an exhibit without objection at the depositions of two FDIC witnesses in related cases, the undersigned finds that this is also in a different posture from the inadvertently produced documents. Because the FDIC allowed this document to be produced and marked as an exhibit to depositions, and because no claim of privilege was asserted at the time it was so produced and marked, the undersigned finds that a waiver has occurred as to this document. Of course, the waiver goes only to this letter itself and not to the underlying criminal reports and referrals to which it refers.

SO ORDERED.