WICHITA LAND & CATTLE
COMPANY, Plaintiff,

v.

AMERICAN FEDERAL BANK, F.S.B.
and John Burgin, Substitute
Trustee, Defendants,

and

Federal Deposit Insurance Corporation, as
Manager of the Federal Savings and
Loan Insurance Corporation Resolution
Fund, Intervenor–Defendant.

Misc. A. No. 90–0247 (RCL).
Foreign Subpoena No. 90–644.
Civ. A. No. 89–AC–1037 (W.D. Tex.).

United States District Court,
District of Columbia.

Oct. 14, 1992.

Eric Yollick, Wilshire & Scott, P.C., Houston, TX, for plaintiff.

Timothy S. Durst, Baker & Botts, Washington, DC, for defendants.

J. William Koegel, Jr., Steptoe & Johnson, Washington, DC, for deponent.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This case comes before the court on defendants' Motion to Compel Production of Documents relating to litigation between the above-named parties in the United States District Court for the Western District of Texas.

### Background

After three separate orders from this court, Greene, J., to the law firm of Steptoe and Johnson ("Steptoe") to make available to defendants for review various documents sought in defendants' original subpoena *duces tecum*, Steptoe has yet to deliver to defendants copies of two such documents.[1] It is for production of these two documents that defendants filed their motion to compel on Dec. 3, 1991. Plaintiff's opposition was filed Dec. 17, 1991, followed by defendants' reply memorandum on Dec. 30, 1991.

Plaintiff Wichita Land and Cattle brought suit in 1989 against defendants American Federal Bank and the Federal Deposit Insurance Corporation ("FDIC") after FDIC'S

---

1. The documents at issue are: 1) a March 17, 1986 letter from George Aubin to Howard Stahl (a Steptoe attorney), attaching a May 1, 1983 SIGMA indemnity agreement, and 2) a memo- randum prepared by Steptoe attorneys regarding a meeting they had with Aubin, with attached chart which describes Aubin-related entities.

takeover of two savings and loan associations in Texas. George Aubin, who was apparently associated with those savings and loans, was represented by Steptoe and Johnson in prior litigation. The defendants subpoenaed Steptoe for all billing and payment records as well as other documents relating to several individuals and organizations who were or may have been Steptoe's clients.

Steptoe moved for a protective order covering some of the subpoenaed records, claiming they were privileged attorney-client communications and that the District of Columbia Bar disciplinary rules barred Steptoe from acceding to defendants' requests. As to other documents, Steptoe claimed that defendants failed to establish their relevance, and further that the task of complying with the subpoena was overly burdensome.

The court rejected each of Steptoe's arguments and the motion for a protective order was denied. The motion to enforce the subpoena was granted and Steptoe was directed to make available to defendants all materials sought by the subpoena. Memorandum and Order, Dec. 21, 1990. Subsequently George Aubin, proceeding *pro se,* sought reconsideration and a stay of the court's order. That motion was denied. Memorandum and Order, April 26, 1991. Mr. Aubin appealed the order and Steptoe filed a "petition for instructions" with this court. The petition was treated as a motion for reconsideration and was denied. Memorandum and Order, June 24, 1991. Steptoe was ordered to make available for review all non-privileged documents requested in the original subpoena.

On July 8, 1991 counsel for defendants, Baker and Botts, reviewed in Steptoe's offices some forty boxes of documents compiled by Steptoe. Baker and Botts took notes regarding the inspected documents and, pursuant to the agreement of the parties, identified those documents that it wanted Steptoe to copy and deliver to Baker and Botts. Subsequently Steptoe informed Baker and Botts that two of the requested documents were privileged, had only inadvertently been included for the initial review, and that Steptoe would withhold them from the copied materials it would deliver. Defendants demanded their production. Steptoe refused to

comply. Defendants filed the motion to compel production, under consideration here, and Steptoe filed its opposition.

### Analysis
#### Waiver of Attorney-client Privilege

 It is defendants' contention that even if the disputed documents were once privileged attorney-client communications or protected by the work product rule, the privilege or protection was forever waived when the documents were produced for inspection by defendants' counsel at Steptoe's offices. Under the circumstances as represented to the court by the parties in their pleadings, this court agrees. While Steptoe attempts to distinguish its actions from the circumstances set forth in the relevant cases where waiver was found, and forcefully argues against the application of what it characterizes as a "per se" waiver rule, the rule in this Circuit is clear. Disclosure of otherwise-privileged materials, even where the disclosure was inadvertent, serves as a waiver of the privilege. *In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989); *Chubb Integrated Systems v. National Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C.1984); *See also Permian Corp. v. United States,* 665 F.2d 1214 (D.C.Cir. 1981); *In re Grand Jury Investigation of Ocean Transportation,* 604 F.2d 672, 674–75 (D.C.Cir.), *cert. denied sub nom. Sea–Land Service, Inc. v. United States,* 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979).

Steptoe focuses on the extent of its efforts to maintain the attorney-client privilege in its preparation of those documents it was ordered to make available to defendants for review. It suggests that because thousands of pages had to be and were screened, and because an exacting process was assiduously employed with such success that only the two documents at issue here fell temporarily into the hands of FDIC's attorneys, and an immediate effort was made to rectify its error, the court should make its determination based on the reasonableness of Steptoe's efforts. In support of its position that the court is obliged in instances of inadvertent disclosure to review the thoroughness of the precautions taken to safeguard the privilege, Steptoe points to dicta in a case which otherwise

holds contrary to Steptoe's position, *In re Sealed Case*, 877 F.2d 976 (D.C.Cir.1989), and to cases from other circuits, none of which is controlling here.

In *In re Sealed Case*, the D.C.Circuit found that as to a subpoenaed document a company tried to withhold from a grand jury on the grounds of attorney-client privilege, prior disclosure of the same document to a government auditor served as a waiver of any valid claim to the privilege, including " 'all other communications relating to the same subject matter.' " *Id.* at 981 (quoting *In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir.1982)). As in the matter before us, the party claiming the privilege sought to diminish the effect of its prior disclosure, claiming that it had been unintended, the result of " 'bureaucratic error' ". *Id.* at 977. The court would not distinguish between waiver that is voluntary and that which may be inadvertent. *Id.* at 980. In either case the effect is the same: the privilege is waived.

The language that Steptoe points to *In re Sealed Case*, "[s]hort of a court-compelled disclosure, *cf. Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir.1978), or other equally extraordinary circumstances, we will not distinguish between various degrees of 'voluntariness' in waivers of the attorney-client privilege," *Id.* (footnote omitted), does not support Steptoe's position. Steptoe contends in its memorandum in opposition that as privileged materials the documents were outside the scope of both the subpoena and this court's order directing production of non-privileged responsive documents. Steptoe, therefore, does not assert that its disclosure of the contested documents was literally compelled. Rather, it tries to place its actions within the ambit of the *Sealed Case* court's passing references to possible qualifications to what is otherwise a bright-line test regarding waiver.

This court agrees with defendants that Steptoe's task of screening forty boxes of documents, however burdensome, does not rise to the level of the "extraordinary circumstances" contemplated by the D.C.Circuit in *In re Sealed Case*. *Id.* In *Transamerica*, the finding of "compelled disclosure," negat-

ing the claim of waiver, turned on the fact that defendant IBM was ordered to produce for inspection 17 million pages, collected from various branch offices, within three months. *Transamerica Computer Corp. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir.1978). Steptoe's task, for which it had several months to prepare, was not the "truly exceptional and unique situation" which accounts for the finding of *de facto* compelled disclosure by the 9th Circuit, which was otherwise hesitant to rule "that the inadvertent production of a privileged document in the context of accelerated discovery proceedings does not constitute a waiver of privilege." *Id.*

Steptoe makes much of footnote five (5) in *In re Sealed Case:*

> We do not face here any claim that the information was acquired by a third party despite all possible precautions, in which case there might be no waiver at all. *See, e.g., In re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 869 (D.Minn.1979), *aff'd*, 629 F.2d 548 (8th Cir. 1980); *see generally Suburban Sew 'N Sweep, Inc.*, [*v. Swiss–Bernina, Inc.*], 91 F.R.D. [254] at 258–61.

877 F.2d at 980. Recounting, in great detail, their own precautions taken in the production process, and the above-quoted language from *In re Sealed Case*, Steptoe concludes that this court is required to examine the reasonableness of those precautionary measures, and further asserts that such an examination will lead to the conclusion that no waiver occurred.

No such examination is required in this Circuit in the context of determining waiver, nor do the cited cases suggest that the courts that authored them would have undertaken an examination under the circumstances of *this* case. *Berkley & Co.*, a Minnesota case, dealt with a situation where documents were stolen by an employee of the company asserting the privilege, despite precautions taken to safeguard them. 466 F.Supp. at 869.

The *Berkley* court recognized a modern trend toward upholding the privilege in an era where high-tech means are employed to surreptitiously gain access to confidential communications, despite best efforts to main-

tain secrecy. *Id.* The court likened the employee who betrayed his company to an attorney who "acts in bad faith toward his client." *Id.* No comparable circumstances are alleged here. Defendants have knowledge of the disputed documents only because Steptoe, acting as Aubin's former counsel, presented them to Baker and Botts attorneys for inspection.

As FDIC suggests in its reply to Steptoe's opposition, the other case cited in footnote five (5) of *In re Sealed Case, Suburban Sew 'N Sweep*, supports the position that inadvertent disclosure, like voluntary disclosure, will result in a waiver of attorney-client privilege. There, letters from the defendant to his counsel were recovered by the plaintiff from a trash bin. The district court, holding that the privilege was waived, reversed a magistrate's order to return the documents to the defendant. *Suburban Sew 'N Sweep, Inc. v. Swiss–Brunina, Inc.*, 91 F.R.D. 254 (N.D.Ill.1981). It is unfair to suggest that Steptoe in any way "abandoned" the disputed communications, as was the case in *Suburban Sew 'N Sweep*. Nonetheless, by producing them for inspection even after a lengthy screening process, "waiver would have to be implied from their failure to protect the privilege by maintaining the confidentiality of the documents." 91 F.R.D. at 257 n. 1.

In its pleadings, Steptoe repeatedly distinguishes its actions from those of the parties in several cases where waiver was found. It emphasizes the laudable measures it took to protect the privileged documents and then to recover from its blunder, as compared to the situations where documents were turned over voluntarily to avoid further government scrutiny, *In re Subpoena Duces Tecum*, 738 F.2d 1367 (D.C.Cir.1984), or where much time passed between disclosure and assertion of the privilege, *In re Grand Jury Investigation of Ocean Transportation*, *supra*, or where protective measures were too lax to begin with, *In re Grand Jury Proceedings*,

727 F.2d 1352 (4th Cir.1984); *State v. Vennard*, 159 Conn. 385, 270 A.2d 837 (1970).[2] While its disclosure of materials to defendants' counsel was neither intentional and self-serving, nor an act of wanton carelessness, the distinctions drawn by Steptoe stress form over substance in the relevant analysis.

What is more important than process or intent is that the confidentiality of the disputed documents has been irrevocably breached. In their pleadings, defendants represent to the court that as a result of their review of the documents in Steptoe's office they have substantial knowledge of their contents. In the case of the March 17, 1986 letter from George Aubin to Howard Stahl (a Steptoe attorney), defendants offer quoted language that they noted during the review, which goes directly to the heart of the letter. As to the memorandum of April 8, 1986—a description of a meeting between Aubin and Steptoe attorneys, prepared by the attorneys—defendants have attached to their motion a chart, produced to them during this litigation, which they claim is substantially similar to the chart attached to the memorandum in question. Steptoe does not deny these claims, but argues that the degree of disclosure is not sufficient to effect a waiver.

Magistrate Dwyer of this court stated in a prior decision that, "[w]e will deem a document 'disclosed' where defendant has learned the 'gist' of the document's contents." *Chubb Integrated Systems Limited v. Nat. Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C.1984). The court concludes that defendants' knowledge of the contents of the documents they seek, as proffered, satisfies the test set forth in *Chubb*. Clearly the review process revealed to defendants the 'gist' of their contents. This information cannot be expunged from defendants' minds by an order from this court denying production.

The Court will not look behind th[e] objective fact[s] to determine whether the plain-

---

**2.** Additionally, Steptoe cites a line of cases that set out tests whereby courts might evaluate the reasonableness of the procedure used to avoid disclosure or to rectify it, and to judge the nature of the disclosure and consider the equities. *E.g., Lois Sportswear, U.S.A., Inc v. Levi Strauss & Co.* 104 F.R.D. 103 (S.D.N.Y.1985); *FDIC v. Ernst &*

*Whinney*, 137 F.R.D. 14 (E.D.Tenn.); *Lien v. Wilson & McIlvaine*, No. 87 C 6397, 1988 WL 58613, (N.D.Ill. June 2, 1988). Each of these cases was decided in another jurisdiction. As they are not controlling in the D.C. Circuit, this court will undertake no analysis or application of their holdings to the issue before us.

tiff really intended to have the [documents] examined. Nor will the Court hold that the inadvertence of counsel is not chargeable to his client. Once the document was produced for inspection, it entered the public domain. Its confidentiality was breached thereby destroying the basis for the continued existence of the privilege.

*Underwater Storage, Inc. v. United States Rubber Co.*, 314 F.Supp. 546, 549 (D.D.C. 1970).

### Waiver of Work Product Protection

Steptoe's brief discussion of the grounds for finding waiver of the work product rule as set forth in *In re Subpoena Duces Tecum*, 738 F.2d 1367 (D.C.Cir.1984), and Steptoe's conclusion that no such waiver occurred in this instance, is flawed. In *Subpoena Duces Tecum*, the D.C.Circuit examined whether prior selective disclosure of documents to the SEC by a corporation waived the corporation's right to claim the work-product protection for those documents in later litigation against another party. In affirming the district court's finding of waiver, the D.C.Circuit summarized the "three main factors" underlying its decision:

1) 'The party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege,' *Sealed Case*, 676 F.2d at 818; 2) appellants had no reasonable basis for believing that the disclosed materials would be kept confidential by the SEC; and 3) waiver of the privilege in these circumstances would not trench on any policy elements now inherent in this privilege.

738 F.2d at 1372.

Nowhere in its opinion did the court suggest that these factors are the elements for a definitive test. Neither can one infer, as Steptoe would have it, that satisfaction of a single factor is dispositive of a claim to the privilege. Steptoe says that because it has not sought to use the privilege in a way that is inconsistent with its purpose, no waiver occurred. Further, Steptoe asserts, without evidence of manipulation, a finding of waiver would be improper.

To the extent that the three factors are applicable to this case, where there is no

issue of prior selective disclosure, the analysis does not end with a discussion of inconsistent purposes or manipulation. While the second factor is inapplicable in this context, the third factor merely states that the court considered whether the policy underlying the privilege militates against a finding of waiver in a given instance. This court finds grounds for waiver independent of the first two factors, and further believes that this finding is consistent with and in no way undermines the policy elements of the privilege.

Manipulation of the work product protection is just one ground for waiving the privilege. In fact, "[a]ny disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege." 676 F.2d at 818 (citations omitted). While Steptoe seeks to persuade us otherwise, the very act of inadvertently disclosing the challenged memorandum to defendants' counsel was not only inconsistent with maintaining its confidentiality, but destroyed it. To hold that such an error is not sufficient to undermine the protected status of the document would frustrate the policy that materials compiled in anticipation of litigation demand zealous stewardship.

Steptoe may think it unfair that the same consequences flow from an act that is duplicitous or manipulative and one that is merely inept, yet that result is entirely consistent with the cases in this Circuit. Presented with facts similar to the ones in this case, the *Chubb* court held, "[t]he attorney-client privilege is waived by any voluntary disclosure." *Chubb Integrated Systems v. National Bank of Wash.*, 103 F.R.D. 52, 63 (D.D.C.1984) (citations omitted). In *Chubb*, some 52,000 pages were produced for inspection, and after agreeing to defendant's request for copies of some 14,000 pages, plaintiff claimed that several were protected from discovery. The plaintiff asserted that their inadvertent inclusion of certain documents in the review process did not waive a subsequent claim of privilege as to those documents.

■ In its review of defendant's motion for production and plaintiff's opposition thereto, the *Chubb* court distinguished between attorney-client privilege and work

product protection. While a waiver of the former is not necessarily a waiver of the latter, the distinction was not relevant because "[plaintiff's] disclosure was to its opponents. This is clearly inconsistent with the adversary system." *Id.* at 63. *See also Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C.Cir.1981). There are instances where disclosure of attorney work product to third parties will not waive the protection, but where disclosure to an adversary in litigation constitutes a waiver of attorney-client privilege, it also effects a waiver of the work product rule. *Id.* (citing *TCC v. IBM*, 573 F.2d at 647 n. 1).

As discussed above, Steptoe's disclosures are deemed a waiver of attorney-client privilege. Hence, the disclosures waive the work-product privilege. The court recognizes that Steptoe is no longer employed by Mr. Aubin and, therefore, is not a party to the underlying litigation, strictly speaking. Nonetheless, as Aubin's former counsel, Steptoe continues to act in a representative capacity, as custodian of the documents at issue. It is in that capacity that Steptoe assiduously contested defendants' original subpoena, through a protracted process that produced three separate orders for production, and in which it continues to assert the privilege as to the two remaining documents.

As Judge Greene of this court noted in his Memorandum and Order of Dec. 21, 1990, at p. 2, Steptoe's legal and ethical obligations to its former client does not prevent discovery. This court has the power to order production of non-privileged documents and to determine whether any privilege which may have once attached to other documents was waived, and to compel their release. Steptoe's changed relationship to Mr. Aubin or others is not relevant to this determination. Steptoe asserted the privileges on behalf of its former client, and then, in response to the court's order, arranged for inspection of the subpoenaed materials. When it disclosed the memorandum—work product it had prepared as Aubin's counsel—to defendants, its failure to protect the memorandum was an act inconsistent with the adversary system. The consequence of that act—waiver of the privilege—is charged to Steptoe's former client.

*In re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 674 (D.C.Cir. 1979); *Cf.* 8 Wigmore, Evidence § 2325 McNaughton rev. 1961) ("The risk of insufficient precautions is upon the client.").

### Conclusion

Both parties point to the same language in *In re Sealed Case* in support of their respective but conflicting positions:

[T]he confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant. We therefore agree with those courts which have held that the privilege is lost 'even if the disclosure is inadvertent'. (Citations omitted).

877 F.2d at 980. We disagree with Steptoe's position that the quoted language is a requirement that this court scrutinize the precautions taken and conclude that such scrutiny will absolve Steptoe of the effect of its inadvertent disclosure.

On the contrary, the fact that Steptoe revealed the contested documents to FDIC's attorneys during the inspection process is prima facie evidence that Steptoe failed to give the documents protection adequate to maintain the claim of privilege. The argument that the disclosure was inadvertent, and that immediate steps were taken to correct the error and assert the privilege, does not overcome the presumption that the disclosure was a voluntary waiver. Nor is the argument that Steptoe took all reasonable steps to shield privileged documents from the discovering party persuasive in these circumstances. One need not intend an act for that act to have an effect or consequence. Here the effect of Steptoe's volitional act was to reveal the contents of the documents to defendants' attorneys, the adversaries in litigation of the party for whom Steptoe asserted the privilege. The nature and extent of the disclosure had the effect, in law, of breaching the confidentiality of the documents, thereby waiving any privileged status they may have once had, and rendering them discoverable materials, responsive to the subpoena.

To find waiver in these circumstances may seem a harsh result, but is in keeping with

the decisions of this Circuit. The *Sealed Case* court explained why potentially harsh results are desirable in this context. There is a tension between the principle of unfettered judicial access to all relevant evidence on the one hand, and on the other, the policy supporting evidentiary privileges, which encourage complete candor between client and lawyer, as well as thorough case preparation that is essential to the adversary system. Liberal application of waiver discourages organizations from broadly labeling materials "privileged." The more documents that are so labeled, the greater the likelihood of an inadvertent disclosure that will render all related communications discoverable. *Id.* "[I]f a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crowned jewels." *Id.*

Having displayed the privileged jewels to the discovering party, only to snatch them back when it realized its error, Steptoe now asks the court to return the jewels to the protection the jewelry box. The court will not do so. If these documents were once precious they have since lost that character, precisely as a result of Steptoe's own actions, and the court can not restore them to their former status. Steptoe is directed to make available to the defendants the two documents at issue.

Upon consideration of defendants' motion to compel production of documents, and all papers submitted in support and opposition thereto, it is hereby:

**ORDERED** that the motion is granted; and it is further

**ORDERED** that within 10 days of the date of this order Steptoe and Johnson provide to defendants copies of (1) the March 17, 1986 cover letter from George Aubin to Howard Stahl, which attaches a May 1, 1983 SIGMA indemnity agreement, and (2) the April 8, 1986 memorandum, including the chart attached thereto, regarding a meeting between Messrs. Aubin, Martin, Kitchen, and Clark.