**In re UNITED MINE WORKERS OF AMERICA EMPLOYEE BENEFIT PLANS LITIGATION.**

No. MDL 886.
Misc. A. No. 91–386.

United States District Court,
District of Columbia.

June 27, 1994.

See also 854 F.Supp. 914.

Dannie B. Fogleman, Coleman, Coxson, Penello, Fogleson & Cowen, P.C., Washington, DC, for Dorton Coal Co.

Robert Bell, Kaye, Scholer, Fierman, Hays & Handler, Washington, DC, for Island Creek Coal Co.

Julia Penny Clark, Bredhoff & Kaiser, Washington, DC, for UMWA 1974 Pension Trust.

David W. Allen, UMWA Health & Retirement Fund, Washington, DC.

Dannie B. Fogleman, Coleman, Coxson, Penello, Fogleson & Cowen, P.C., Washington, DC, for U & M Mining Co. of Paintsville, Inc.

### *MEMORANDUM OPINION*

THOMAS F. HOGAN, District Judge.

Pending before the Court is Plaintiff's Motion to Reconsider Magistrate Judge Kay's Memorandum Order of April 14, 1994, granting Defendants' Motion to Compel Production of Documents and denying Plaintiffs' Motion for an Order to Require Defendants'

Counsel to Return or Deposit with the Court under Seal All Notes from Privileged Documents.

On February 7, 1994, the privileged documents at issue were inadvertently released to defendants' counsel for review at the law offices of plaintiffs' counsel, Bredhoff & Kaiser.[1] Among the approximately sixty boxes of released documents were boxes numbered 594, 595 and 596, which contained the files of Deborah Malamud, a lawyer formerly employed by Bredhoff & Kaiser. ("Malamud Files"). Included in the Malamud files were various privileged items, including handwritten notes from confidential client interviews and other confidential attorney-client communications and attorney work product. Plaintiffs failed to discover their error until February 14, 1994, when defendants requested copies of some of the privileged documents. By that time, defense counsel had prepared an index for the documents and had taken extensive notes about the documents' contents.[2] It is these privileged documents that defendants seek to compel and these notes that plaintiffs seek to require defendants' counsel to return or deposit with the Court under seal.

Also at issue is the *scope* of the subject matter of the privileged documents plaintiffs' have allegedly waived.[3] Because this Circuit has stated that a waiver of privilege documents extends "to all other communications relating to the same subject matter," *In re Sealed Case*, 877 F.2d 976, 981 (D.C.Cir.1989) (quoting *In re Sealed Case*, 676 F.2d 793, 809 (D.C.Cir.1982)), this Court's decision could alter the privileged nature of many documents beyond those contained in boxes 594, 595 and 596. Defendants characterize the "subject matter" of the Malamud files in very broad terms—"evergreen clause," "withdrawal liability," and "nonconforming agreements." These terms form the core of this litigation. If the Court finds that a waiver has occurred and construes the scope of the waiver broadly, as defendants suggest, defendants potentially could gain complete access to all of the confidential attorney-client communications and work product of the attorneys who have represented the plaintiffs in this litigation for the last six years. In effect, counsel could run rampant in counsels' offices, pawing through their most privileged files.

## DISCUSSION

In seeking to compel plaintiffs to produce boxes 594, 595 and 596, defendants concede that they knew that the boxes contained privileged files which were not a part of the third-party production files to which they were granted access. Nonetheless, defendants argue they are entitled to the privileged files because the existence of knowledge is irrelevant under the case law of this Circuit.

Plaintiffs present two main arguments in support of their motion requiring defendants' counsel to relinquish their notes on the Malamud files. First, plaintiffs contend the documents in the three boxes were never "disclosed." In plaintiffs' view, defendants' counsel merely gained physical access to the documents under circumstances in which they had no right to read them. Second, plaintiffs claim defendants have not made the required showing that the confidentiality of the com-

1. Carol King, a paralegal at Bredhoff and Kaiser, released the documents to Dannie B. Fogleman, Thomas P. Gies, Mary Lou Smith, and P. Kathleen Lower as part of an initial production of documents pursuant to ¶ 4(d)(3) of the MDL Case Management Order. Paragraph 4(d)(3) of the Case Management Order provides that within 60 days after its entry, plaintiffs shall produce to all defendants copies of documents that have been produced to any defendants in the pending cases.

2. On February 7, 1994, the day plaintiff's counsel released the privileged documents to defendants' counsel, defendants' counsel prepared an index for the documents. That evening, defendants' counsel discussed with one another and other

partners in their firms whether their actions were permissible under the case law of this Circuit and applicable ethical rules. Defendants' counsel concluded that their actions were appropriate, although in contravention of ABA Formal Ethics Opinion 92–368. The following day, defendants' counsel proceeded to investigate the files further and prepare a 31–page memorandum.

3. This issue will be addressed in a forthcoming Memorandum Opinion. In a separate motion to reconsider Magistrate Judge Kay's Order of April 17, 1994, defendants seek additional privileged documents relating to the same "subject matter" contained in boxes 594, 595 and 596.

munications reflected in those documents has been breached. Therefore, plaintiffs argue, the confidential communications and attorney work product have not been waived. The Court will address these arguments separately.

### 1. Did plaintiffs "disclose" the privileged documents to defense counsel?

■ The leading case from this Circuit relating to inadvertent waiver of privileged materials, and the primary case upon which both parties rely, is *In re Sealed Case,* 877 F.2d 976. In *In re Sealed Case,* the United States Court of Appeals for the District of Columbia Circuit considered whether a company's prior inadvertent disclosure of a privileged document to the IRS waived the attorney-client privilege with respect to that document and five related documents. Writing for the Court of Appeals, Judge Silberman rejected the company's argument that it had not waived the privilege because it had involuntarily and inadvertently disclosed the document due to a "bureaucratic"[4] error. 877 F.2d at 980. Judge Silberman stated in an often quoted passage:

> [t]he courts will grant no greater protection to those who assert the privilege than their own precautions warrant. We therefore agree with those courts which have held that the privilege is lost 'even if disclosure is inadvertent.' ... In other words, if a client wishes to preserve the privilege, it must treat the confidentiality of the attorney-client communications like jewels—if not crown jewels. Short of court-compelled disclosure, or other equally extraordinary circumstances, we will not distinguish between various degrees of 'voluntariness' in waivers of the attorney-client privilege.

*Id.* (citations omitted).

The Court of Appeals' conclusion that the company had waived the attorney-client privilege with respect to the one memorandum it had disclosed to the IRS left open the scope of the waiver. Noting that the court had previously held, "a waiver of the privilege in an attorney-client communication extends 'to all other communications relating to the same subject matter,' " *id.* at 980–81 (quoting *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir.1982)), the Court of Appeals remanded the case to the district court to further consider the scope of the waiver. The Court of Appeals stated that the district court had failed to fully explain why it had found that all six documents were related. *Id.*

The Court of Appeals also rejected the company's request for a hearing on the issue of whether the government was guilty of prosecutorial misconduct for improperly breaching the attorney-client privilege. Allegedly, the prosecutors released the other five documents they had obtained from the company's former vice-president pursuant to an immunity agreement. The Court of Appeals declined to order a hearing on the issue, but it noted the possibility that the government could be precluded from using the five documents later if an indictment were returned and the company sought to exclude the evidence on the grounds of prosecutorial misconduct. *Id.* at 982.

Defendants interpret *In re Sealed Case* as establishing a bright-line, "per se" rule for this Circuit. According to defendants, the disclosure of privileged documents destroys any privilege that may have attached to the documents, regardless of whether the disclosure was voluntary or inadvertent.

Plaintiffs do not dispute that *In re Sealed Case* set forth a "bright-line" test that disclosure constitutes a waiver of privileged documents. However, plaintiffs contend that a threshold issue applies to this test. Citing *In re Sealed Case,* plaintiffs assert that privileged documents are not "disclosed" for purposes of the waiver rule if opposing counsel gains access to the documents under circumstances in which the opponent has no right to them. Plaintiffs base this reading of *In re Sealed Case* on the fact that the Court of Appeals *did not hold* that the attorney-client privilege had been waived with respect to the five documents the former vice-president had given to the government. If that act had waived the privilege, plaintiffs argue, there would have been no need for the Court of

---

**4.** The Court of Appeals interpreted the term, "bureaucratic," to mean a human error.

Appeals to have remanded the case to the district court to consider whether the company's voluntary disclosure of the one document effected a subject-matter waiver that encompassed the other five documents.

Defendants contend that the documents at issue here are in no way analogous to the five documents the former vice-president allegedly "stole" for the government's benefit in *In re Sealed Case*. In the present case, defendants note, plaintiffs voluntarily gave the disputed documents to defendants to review.

Although plaintiffs' argument has some appeal, the Court declines to interpret *In re Sealed Case* as narrowly as plaintiffs suggest. Having carefully considered the Court of Appeals' ruling in *In re Sealed Case* and the subsequent cases construing and applying *In re Sealed Case*, the Court finds the documents at issue here more analogous to the privileged documents that were allegedly misappropriated in *United Mine Workers v. Arch Mineral Corp.*, 145 F.R.D. 3, 6 (D.D.C. 1992), and the privileged documents that were inadvertently released in *Wichita Land & Cattle v. American Federal Bank*, 148 F.R.D. 456, 457 (D.C.Cir.1992), than the five documents the prosecutors allegedly improperly obtained pursuant to an individual defendant's immunity agreement in *In re Sealed Case*. Far from establishing that privileged documents are not "disclosed" for purposes of the waiver rule if an opponent gains access to the documents under circumstances in which the opponent has no right to them, cases subsequent to *In re Sealed Case* indicate that absent "extraordinary circumstances," the release of privileged documents destroys their privileged nature irrespective of how the opposing party gains access to the documents.

For instance, in *Arch Mineral*, Judge Revercomb rejected the argument that the attorney-client privilege continued to apply to documents which allegedly had been misappropriated and leaked to opposing counsel. The documents at issue were clearly privileged; each was stamped "CONFIDENTIAL—ATTORNEY CLIENT COMMUNICATION/Do not copy or further distribute." 145 F.R.D. at 7. Opposing counsel represented that its client, the United Mine Work-

ers' Association ("UMWA"), had gained access to the privileged memoranda only because an anonymous source had sent it multiple copies. Because Arch, the proponent of the privilege, was unable "to show not only that it intended the[ ] documents to be confidential, but that it took all possible precautions to maintain their confidentiality," Judge Revercomb held that Arch waived the attorney-client privilege when it failed to maintain the confidentiality of the memoranda. *Id.* at 8–10. In so holding, Judge Revercomb expressly relied upon *In re Sealed Case*. *Id.* at 10–11.

Plaintiffs attempt to distinguish *Arch Mineral* by asserting that there were no circumstances in that case suggesting that the union's counsel knew or should have known that the documents at issue were not intended for their review. On the contrary, plaintiffs assert, someone intended for the union to have the confidential memoranda, and the union gave them to its counsel. The Court disagrees. The fact that the documents in *Arch Mineral* were stamped "CONFIDENTIAL—ATTORNEY CLIENT COMMUNICATION/Do not copy or further distribute" suggests that counsel for the union must have known that the documents were both privileged and not intended for their review. Judge Revercomb's opinion reflects that the memoranda were "plainly internal documents that address[ed], *inter alia*, sensitive legal questions of corporate organization and labor relations." 145 F.R.D. at 7. Moreover, plaintiff's counsel argued in *Arch Mineral* that "given [the memoranda's] privileged nature, it was misconduct on the part of the UMWA's counsel to use them," and the opinion does not reflect that the UMWA's counsel claimed that they failed to recognize the memoranda's privileged nature. *Id.* Based on the above circumstances, the Court believes it is fair to infer that, as in the present case, the union's counsel knew or should have known that the memoranda were privileged and not intended for their review.

Moreover, unlike the situation in *Arch Mineral*, there is no allegation in this case that defendants "misappropriated" the Malamud files. Plaintiffs' counsel admit that they voluntarily, though inadvertently, released

the privileged files to defendants to review in their law offices. For this reason, the Court finds the case more closely analogous to *Wichita Land & Cattle.*

In *Wichita Land & Cattle,* Judge Lamberth also applied the " 'per se' waiver rule [of this Circuit]" and held that the defendant law firm's inadvertent disclosure of two privileged documents that were among forty boxes of documents released to defense counsel waived the attorney-client privilege with respect to those documents. 148 F.R.D. at 457–58. Although the defendant law firm, Steptoe & Johnson, claimed it "took all reasonable steps to shield privileged documents from the discovering party," [5] *id.* at 461, "the disclosure was inadvertent, and ... immediate steps were taken to correct the error and assert the privilege," Judge Lamberth found such efforts insufficient to overcome the presumption that the mistaken disclosure effected a voluntary waiver. *Id.* Unlike the "extraordinary circumstances" contemplated by the D.C. Circuit in *In re Sealed Case,*[6] Judge Lamberth remarked, "Steptoe's task, for which it had several months to prepare, was not the 'truly exceptional and unique situation' which account[ed] for the finding of *de facto* compelled disclosure by the 9th Circuit" in *Transamerica. Id.* at 458.

Likewise, the factual circumstances surrounding the discovery mistake in this case in no way support a finding of "compelled disclosure." While there was no allegation in *Wichita Land & Cattle* that the plaintiffs *knew* the documents were privileged (as the circumstances suggest in *Arch Mineral,* and as is the case here), given the "per se" rule of *In re Sealed Case* and the subsequent holding of *Arch Mineral,* the Court does not believe this distinguishing fact means the waiver rule does not apply to this case.

The strongest support for plaintiffs' position can be found in the American Bar Association's ("ABA") Formal Ethics Opinion 92–368, entitled "Inadvertent Disclosure of Confidential Materials." ("ABA Opinion"). This opinion provides, in relevant part:

A lawyer who receives materials that on their face appear to be subject to the attorney-client privilege or otherwise confidential, under circumstances where it is clear that they were not intended for the receiving lawyer, should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them.

ABA Opinion at 1.

It is apparent that the ABA Committee considered this opinion to be in conflict with the legal standard applied by this Circuit. The ABA Committee referred to *In re Sealed Case* in its opinion and construed the case as holding that any unforced disclosure of attorney-client privileged communications destroys confidentiality and terminates the privilege, not only for the communications disclosed but also for all related communications. *Id.* at 4–5.

The Court acknowledges that none of the cases upon which the Court has relied address the vitality of the ABA Formal Ethics Opinion 92–368. The ABA issued its opinion in November of 1992, after the above cases were decided. As far as this Court is aware, no court in this Circuit has had the opportunity to revisit the inadvertent disclosure issue since the ABA opinion.[7]

▮ It is unfortunate that counsel seek to take advantage of opposing counsel's mistake and disregard the ABA Formal Ethics Opinion. Perhaps it is reflective of the way our culture has "progressed" in recent years. Nonetheless, the Court feels compelled to rule in favor of defendants. This Circuit's

---

**5.** Steptoe & Johnson's efforts to protect and correct the inadvertent release of the privileged documents in *Wichita Land & Cattle* far exceeded plaintiffs' efforts in the present case.

**6.** In *In re Sealed Case,* the D.C. Circuit cited *Transamerica Computer Corp. v. IBM,* 573 F.2d 646, 651 (9th Cir.1978), a case in which the Ninth Circuit held that the factual circumstances surrounding a trial court's discovery order amounted to a "compelled disclosure" that negated the opposing party's claim of waiver. The

*Transamerica* holding turned on the fact that the district court had ordered the defendant (IBM) to produce for inspection within three months 17 million pages of documents from various branch offices.

**7.** This Court is aware of no case that has adopted the ABA position. The Court also notes that the Ethics Committee of the D.C. Bar has not had a chance to address the issue presently before the Court.

case law compels such a result, although it conflicts directly with the ABA Ethics Opinion which carries no precedential weight. In this Circuit, the holder of the privilege bears the burden of maintaining the confidentiality of privileged information, *see, e.g., In re Sealed Case,* 877 F.2d at 980; *Arch Mineral,* 145 F.R.D. at 6; absent "extraordinary circumstances," disclosure waives the privilege with respect to the privileged documents, regardless of whether the disclosure is voluntary or inadvertent. *See, e.g., Wichita Land & Cattle* 148 F.R.D. at 458–59; *Arch Mineral Corp.,* 145 F.R.D. at 10.

The Court recognizes that the magnitude of plaintiffs' discovery error is unprecedented and far exceeds other "inadvertent disclosures" courts of this Circuit have considered in prior cases. *See, e.g., In re Sealed Case,* 877 F.2d at 977 (six documents); *Wichita Land & Cattle* 148 F.R.D. at 456–57 (one letter and memorandum); *Arch Mineral,* 145 F.R.D. at 6 (two memoranda); *Chubb Integrated Systems,* 103 F.R.D. at 62 (several documents). Nonetheless, absent further instruction from the Court of Appeals for the District of Columbia Circuit, the Court declines to depart from this Circuit's consistently applied "per se" rule by grafting a "disclosure" exception onto the rule, as plaintiffs have advocated.[8]

Having found that plaintiffs have waived the privileged nature of the documents at issue by releasing them to defense counsel for their review, the Court must now consider whether defendants have made the required showing that the confidentiality of the communications reflected in those documents has been breached.

**2. *Have defendants made the required showing that the confidentiality of the communications reflected in the privileged documents has been breached?***

■ Plaintiffs' alternate ground for reconsideration of Magistrate Judge Kay's Order of April 14, 1994 is that even if counsel were entitled to read the documents in the three boxes, those documents still were not "disclosed" because defendants' counsel have not carried their burden of showing that they obtained "substantial knowledge of [the] contents" of the privileged communications that the documents reflect. *Wichita Land,* 148 F.R.D. at 459. Magistrate Judge Kay rejected this argument, holding "the defendants took detailed notes of the documents which did, in fact, give them the 'gist' of their contents." Mem. Or. at 5. Plaintiffs contend that the Court is required to make this determination separately with respect to *each* privileged document. Support for plaintiffs' position can be found in the case law of this Circuit.

The "gist" standard applied by Magistrate Judge Kay was initially set forth in this Circuit by Magistrate Judge Dwyer in *Chubb Integrated Systems,* 103 F.R.D. 52, 63 (D.D.C.1984). Discussing the degree of disclosure necessary to constitute a waiver, Magistrate Judge Dwyer stated, "[w]e will deem a document 'disclosed' where defendant has learned the 'gist' of the document's contents." *Id.* (citing *Malco Manufacturing Co. v. Elco Corp.,* 307 F.Supp. 1177 (E.D.Pa. 1969)); *see also Wichita Land & Cattle,* 148 F.R.D. at 459 (concluding that defendants' knowledge of contents of privileged documents satisfied 'gist' test set forth in *Chubb* ).

In both *Chubb* and *Wichita Land & Cattle,* the district courts carefully analyzed the discovering party's notes before concluding that the party had sufficient knowledge of the contents to deem the documents disclosed. In *Chubb,* Magistrate Judge Dwyer ordered the defendants to submit to the Court all of their notes and an affidavit detailing both their inspection procedures and their knowl-

---

8. While the Court considers the ABA's position preferable from an ethical standpoint, the Court recognizes that not departing from this Circuit's prior holdings has some practical advantages. In this case, the facts are undisputed—defendants clearly knew that the documents plaintiffs released were privileged and mistakenly disclosed. However, the facts in future cases may be less clear. In such cases, it may be difficult for the Court (and the parties) to determine, in the words of the ABA Formal Ethics Opinion, whether it is clear "under the circumstances" that a given document is not intended for a receiving lawyer, or whether it is clear on the face of the document that the document is privileged. *See* ABA Opinion at 1. The bright-line test presently applied by the courts of this Circuit avoids the practical difficulties inherent in such an approach.

edge of the twelve privileged documents at issue. 103 F.R.D. at 63. Similarly, in *Wichita Land & Cattle*, Judge Lamberth analyzed quoted language that went "directly to the heart of the letter" at issue and a chart that was indisputably "substantially similar to the chart attached to the memorandum in question" before he determined that the defendants had presented sufficient evidence of knowledge of the two privileged documents at issue to satisfy the test set forth in *Chubb*. 148 F.R.D. at 459.

In this case, plaintiffs speculate that defendants' counsel spent three hours reviewing the documents and read between 39 and 137 pages of the 3,000 pages of documents. Plaintiffs contend that defendants' notes are riddled with errors, mistaken assumptions, and outright misrepresentations of what the documents contain.

Defendants claim that they spent approximately twenty hours reviewing the documents and that plaintiffs vastly overstate the number of privileged documents at issue. To support their claim that they have obtained the 'gist' of the documents they reviewed, defendants provide indices and quote language from the documents in their March 4 motion to compel. Defendants contend that they could not have prepared the indices, which, in defendants' opinion, sufficiently describe the nature and subject matter of the privileged documents, had they not first learned the gist of the privileged documents. Additionally, defendants claim that they thoroughly reviewed *all* of the privileged documents and can quote directly from a number of additional documents they failed to cite in their motion to compel. For instance, defendants represent that Mr. Gies prepared a detailed memorandum which describes in great detail many of the most "enlightening" and relevant documents contained in the Malamud files.

■ The Court declines to affirm Magistrate Judge Kay's Order of April 14, 1994 in its entirety at this time. While the Court agrees with Magistrate Judge Kay that plaintiffs' inadvertent production of the Malamud files waived the privileged character of the documents contained therein, absent a more complete record, the Court expresses no opinion as to whether defendants have succeeded in establishing that they learned the substantial contents or the "gist" of the privileged documents at issue.[9] In light of defendants' representation that they have at least one additional memorandum which further demonstrates the extent of their knowledge of the contents of the Malamud files, the Court directs defendants to submit *any* additional notes and materials in their possession to Magistrate Judge Kay for an *in camera* review. Additionally, plaintiffs shall deliver boxes 594, 595 and 596 to Magistrate Judge Kay's Chambers for inspection.

Under the case law of this Circuit, defendants bear the burden of showing that they learned the substance or 'gist' of the confidential communications they seek. Based on a review of prior case law in this Circuit, the Court agrees with plaintiffs that a court should make this determination separately with respect to *each* privileged document. Given the potential significance of these privileged materials to this entire MDL litigation and the vast amount of privileged information defendants seek in their motion to compel the documents contained in boxes 594, 595 and 596, and their related motion addressing the scope of the subject matter waiver, it behooves the Court to insist upon a full record for review. Until defendants submit these additional materials, the Court will not determine whether defendants' knowledge of the privileged documents' contents satisfies the standard of this Circuit suffi-

---

**9.** The Court notes, however, that it disagrees with Magistrate Judge Kay's holding insofar as it can be read to suggest that misinterpretations or misconstructions have no bearing on the issue of waiver. A certain degree of disclosure is necessary to constitute a waiver. *Chubb*, 103 F.R.D. at 63. A privileged document is deemed 'disclosed' when a party has learned the 'gist' of the document's contents. *Wichita Land & Cattle*, 148 F.R.D. at 459 (quoting *Chubb*, 103 F.R.D. at 63). While the Court does not believe defendants are required to demonstrate that their materials contain *no* errors, misstatements or omissions to satisfy the substantial knowledge or 'gist' standard applied by this Circuit, the Court does believe that significant misinterpretations or misconstructions bear on the issue of waiver because they reflect the *degree* of disclosure that took place.

**514**

ciently to deem the documents disclosed to defendants.

## CONCLUSION

In accordance with this Memorandum Opinion, the Court directs Magistrate Judge Kay to conduct an *in camera* review, considering all of the materials both parties have filed to date and the additional materials the Court has ordered the parties to supply. Magistrate Judge Kay shall issue an order stating his findings as to whether defendants have met their burden in proving that they learned the substantial contents or "gist" of the documents contained in boxes 594, 595 and 596.

SO ORDERED.