In re SEALED CASE.

No. 89–5102.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 8, 1989.

Decided June 27, 1989.

As Amended June 27, 1989.

Before EDWARDS, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The appellant, "Company," appeals from a contempt order of the district court. Company refused to comply with a grand jury subpoena insofar as it was directed to six documents that Company claimed were covered by attorney-client privilege. The district court held the privilege was waived as to all six documents. We agree that there was at least a partial waiver of the privilege, but we remand for the district court to further consider of the scope of the waiver.

## I.

Appellant is a government contractor performing work for the Defense Department on a cost-plus basis. Company and its former chief executive officer ("CEO") are under a grand jury investigation into the possibility of Company's tax evasion as well as a possible conspiracy to defraud the United States. It is thought CEO may have engineered a scheme whereby he received secret rebates (undeclared personal income to him) from subcontractors while the amounts rebated were included on Company's books as payments to the subcontractors and thus business expenses.

The grand jury issued a subpoena in June 1988 to Company seeking production of documents relating to certain adjusting entries made to Company's books in the latter part of 1987. Company produced the documents sought, except for six it claimed were protected by the attorney-client privilege. Three of these documents contain notes taken by Company's former vice president for finance at meetings with attorneys from a law firm retained by Company. The other three are memoranda from that vice president to Company's chief accounting officer ("CAO") transmitting the law firm's legal advice to amend the corporate books to reflect that certain amounts previously reported on its books—and to the IRS—as business expenses be shown as nondeductible income payments to CEO.

The government moved to compel production of all six documents, arguing that the privilege was waived since the documents presumably contained only information that had been or would eventually be reported to the IRS. The district court granted the order, concluding "whatever attorney-client privilege that may have attached to the documents was waived by the filing (or the intention to file) of required forms to the IRS[.]" Company refused to comply, was held in contempt, and thereafter brought an appeal.

While the appeal was pending, the government learned that one of the memoranda in question had already been disclosed, in January 1988, by the CAO to the Defense Contract Audit Agency during a routine audit of the contractor's travel expenses. The government sought and gained a remand to permit the district court to consider this additional ground for the government's claim of waiver. Appellant claimed on remand that the disclosure of the one document to the DCAA had been inadvertent ("a bureaucratic error") and offered to prove that through the testimony of its CAO, but only if his testimony were limited to that issue and his Fifth Amend-

ment privilege were not waived. The district court rejected the proffer, reiterated its prior finding that if the privilege existed, it had been waived because the information in the documents was to be publicly reported, and further found that the disclosure of the one document "was a voluntary intentional disclosure" which "constituted a [further] waiver of the attorney-client privilege not only with respect to the particular document but also as to all *related* communications." (emphasis added). The district court believed that had the disclosure to DCAA been inadvertent rather than intentional, it would have constituted a waiver (if that were the sole grounds for finding a waiver) only with respect to that document and not the other five.

Prior to the remand hearing it was further revealed that the vice president had entered into a personal immunity agreement with the government in October 1987 and, at that time, given *all six* of the documents to the government[1] without Company's authorization. From that, we infer the government continues to seek the documents through subpoena because it is uncertain as to the use that can be made of the copies voluntarily turned over by the vice president. The government asserts that the attorney handling the grand jury proceedings has not been given access to the documents. Nevertheless, Company urged the district court, in the exercise of its supervisory power over grand jury proceedings, to conduct an evidentiary hearing to determine whether the government had engaged in misconduct, which Company apparently thought might justify quashing the subpoena. The district court declined to do so and Company appeals that determination as well.

## II.

The government does not dispute that all six documents fall within Company's attorney-client privilege. It is not argued, for instance, that the memoranda from the vice president to the CAO, communicating the advice given by counsel and directing the adjusting entries be made in accordance with that advice, are outside the privilege.[2] Nor is it claimed that the conversation between the corporate officers and the law firm were not intended to be confidential so that the privilege never attached. *See Mead Data Central, Inc. v. U.S. Dept. of Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977). Instead, the government relies on two grounds for concluding Company waived the privilege for all six documents.

The government first claims that because the documents provide background "detail" supporting the adjusting bookkeeping entries that have been reported to the IRS, Company has waived its privilege in the documents. The government relies on several cases that have addressed the status of the attorney-client privilege in cases involving disclosure of financial information to the IRS or other third parties. In *United States v. Cote,* 456 F.2d 142 (8th Cir.1972), the Eighth Circuit held that the act of filing amended IRS returns waived any attorney-client privilege in an attorney-supervised accountant's workpapers, which contained information later transcribed onto the returns. But the Court remanded to the district court to determine whether any of the workpapers contained *"unpublished* expressions" not part of the data revealed on the tax returns. *Id.* at 145 n. 4. The Court also recognized that in tax cases, waiver typically is not an issue, because "the privilege is said not to attach to information which the taxpayer intends his attorney to report in the contents of a tax

1. According to the government, only an IRS agent connected with the investigation read the documents. The vice president again revealed copies of some of the documents in January, 1988, which the government maintains were read only by a government attorney unconnected with the investigation.

2. There is some uncertainty in the cases and commentary about whether disclosure of confidential communications from one corporate employee to another constitutes disclosure to a third party that waives the privilege. *See, e.g., In re Horowitz,* 482 F.2d 72, 82 n. 10 (2d Cir.) (discussing debate), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). At oral argument the government expressed the view that for the privilege to be useful to a corporation, it must extend to those communications.

return." *See id.* at 145 n. 3 and cases cited therein.

In that vein, *United States v. (Under Seal),* 748 F.2d 871 (4th Cir.1985), held that the privilege did not cover documents, including communications between two attorneys relating to a proposed tax ruling for a client, and material supplied by the client concerning commercial transactions upon which the proposed tax ruling would be based. These documents, according to the court, either did not reveal client communications or were not meant to be confidential. The court thus applied its previous holding in *In re Grand Jury Proceedings,* 727 F.2d 1352 (4th Cir.1984), that "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information, ' "as well as the details underlying the data* which was to be published," ' will not enjoy the privilege." *United States v. (Under Seal),* 748 F.2d at 875 (citations and footnote omitted). Apparently recognizing the aphorism that "God is in the details," the court explained in a footnote:

> [t]he details underlying the published data are the communications relating the data, the document, if any, to be published containing the data, all preliminary drafts of the document, and any attorney's notes containing material necessary to the preparation of the documents. Copies of other documents, the contents of which were necessary to the preparation of the published document, will also lose the privilege. [But] [i]f any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged, must be removed by the reviewing court before the document may be produced.

*Id.* at 875 n. 7.[3]

Although these cases seem to conflate two theories—waiver of an existing privi-

lege and absence of an intent to maintain confidentiality in the first place—we think under either theory the IRS cases are inapposite; the government much too facilely claims that the six documents are merely "details" underlying past or future returns. To be sure, virtually all the material in the documents reflects adjusting entries in Company's books, which have been or will be reported to the IRS.[4] But the crucial significance of the documents—and the apparent reason the government wishes to present them to the grand jury—is that they suggest Company made the adjusting entries *on the advice of counsel* (after the investigation commenced).

The raison d'etre of the hallowed attorney-client privilege is the protection of a client's communications to counsel so that persons, including organizations, will be induced to consult counsel when needed. The *attorney's* communications (his advice) to the client must also be protected, because otherwise it is rather easy to deduce the client's communications to counsel. The documents sought in this case reveal directly the attorney's confidential advice, and their disclosure thereby invades the core of the privilege; it permits an inference to be drawn as to the nature of the client's communications with its lawyers, and, perhaps, as to their motivation (e.g., guilty knowledge) for consulting counsel as well.

Even the very existence of an attorney-client relationship, not normally protected, *see National Union Fire Ins. Co. v. Aetna Cas. & Surety Co.,* 384 F.2d 316, 317 n. 4 (D.C.Cir.1967); *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026, 1027 (5th Cir.1982) (en banc), is privileged in the rare case when a "strong possibility exists that disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case." *In re Grand Jury Subpoena Duces Tecum (Marger/Merenbach),* 695 F.2d 363, 365

---

**3.** Other courts have differed with the Fourth Circuit and held that the privilege is lost only with respect to information actually divulged to the third party. *Schenet v. Anderson,* 678 F.Supp. 1280 (E.D.Mich.1988); *United States v. Schlegel,* 313 F.Supp. 177, 179 (D.Neb.1970).

**4.** If the information has not yet been disclosed, it is hard to think of Company's action as a waiver. Rather, data that Company intends to report is never privileged in the first place.

(9th Cir.1982); *accord In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 453 (6th Cir.1983), *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Baird v. Koerner*, 279 F.2d 623, 633 (9th Cir.1960) ("The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgment of guilt on the part of such client of the very offenses on account of which the attorney was employed[.]") (quoting 97 C.J.S. *Witnesses* § 283 at 803 (1957)). We therefore do not think that any portion of the six documents revealing that the adjusting entries were made on the advice of counsel would be disclosable under the government's primary theory of waiver.

Alternatively, however, the government relies on a waiver caused by the disclosure of one memo to a DCAA auditor, and we think the government is, in this respect, on firmer ground. It will be recalled that Company does not dispute the disclosure but denies its voluntariness, claiming it was inadvertent—"a bureaucratic error." The district court found otherwise, but we do not think it matters whether the waiver is labeled "voluntary" or "inadvertent" and thus do not find it necessary to consider appellant's claim that the CAO should have been permitted to offer limited testimony on this issue only.

■ Although the attorney-client privilege is of ancient lineage and continuing importance, the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant. We therefore agree with those courts which have held that the privilege is lost " 'even if the disclosure is inadvertent.' " *In re Grand-Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir.1984) (quoting *Suburban Sew 'N Sweep, Inc. v. Swiss–Bernina, Inc.*, 91 F.R.D. 254, 258–59

(N.D.Ill.1981)); *State v. Vennard*, 159 Conn. 385, 270 A.2d 837, 849 (1970), *cert. denied*, 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971).

Even assuming Company's disclosure was due to "bureaucratic error," which we take to be a euphemism that necessarily implies human error, that unfortunate lapse simply reveals that someone in the company and thereby Company itself (since it can only act through its employees) was careless with the confidentiality of its privileged communications. Normally the amount of care taken to ensure confidentiality reflects the importance of that confidentiality to the holder of the privilege. To hold, as we do, that an inadvertent disclosure will waive the privilege imposes a self-governing restraint on the freedom with which organizations such as corporations, unions, and the like label documents related to communications with counsel as privileged. To readily do so creates a greater risk of "inadvertent" disclosure by someone and thereby the danger that the "waiver" will extend to all related matters, perhaps causing grave injury to the organization. But that is as it should be. Otherwise, there is a temptation to seek artificially to expand the content of privileged matter. In other words, if a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels. Short of court-compelled disclosure, *cf. Transamerica Computer Co. v. IBM Corp.*, 573 F.2d 646, 651 (9th Cir.1978), or other equally extraordinary circumstances,[5] we will not distinguish between various degrees of "voluntariness" in waivers of the attorney-client privilege.

■ Our conclusion that Company's disclosure of the one memorandum constitutes a waiver still leaves a question as to the scope of the waiver. Appellant would confine the waiver to the one document, but, as we have previously said, a waiver of the privilege in an attorney-client communi-

5. We do not face here any claim that the information was acquired by a third party despite all possible precautions, in which case there might be no waiver at all. *See, e.g., In re Grand Jury*

*Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 869 (D.Minn.1979), *aff'd*, 629 F.2d 548 (8th Cir.1980); *see generally Suburban Sew 'N Sweep, Inc.*, 91 F.R.D. at 258–61.

cation extends "to all other communications relating to the same subject matter." *In Re Sealed Case,* 676 F.2d 793, 809 (D.C. Cir.1982). Since such determinations properly depend heavily on the factual context in which the privilege is asserted, we will not disturb a district court's decision as to the question unless it can be shown the court abused its discretion. *Cf. Pierce v. Underwood,* — U.S. —, 108 S.Ct. 2541, 2547–48, 101 L.Ed.2d 490 (1988) (decisions that resist application of general rules and depend on particular factual situations are appropriately reviewed under abuse of discretion standard). In this case, although the district court extended the waiver to all six documents, it did not fully explain why the communications were related. Of course, all six—including the notes of the meeting—stemmed from the same consultation Company had with its law firm. But the "subject matter" of the waiver could, nevertheless, be defined in a number of different ways. Did the district court mean, for instance, to define the "subject matter" as all communications "relating" to the adjustment entries, which—as suggested at oral argument—would permit the individual lawyers and corporate officers present at the meeting to be called before the grand jury to describe their discussions, or perhaps even other communications between Company and its counsel? Or, alternatively, was the waiver limited to those intra-Company communications revealing that Company's accounting adjustments were made upon the advice of counsel, in which case is it not clear whether the actual notes of the meeting must be disclosed? Given the potential implications of a broad definition of the subject matter of Company's waiver, we think it appropriate to remand to the district court for further consideration of that issue.[6]

### III.

■ After Company learned that the government had already obtained the six documents from the vice president, as part of an agreement by which he was promised immunity, appellant sought a full inquiry to determine whether the government had improperly breached Company's attorney-client privilege. If so, appellant suggests that the subpoena ought to be quashed, *see* FED. R. CRIM. P. 17(c) (court may quash subpoena if compliance would be unreasonable or oppressive), and, perhaps, that individual assistant United States attorneys should be disqualified as prosecutors, *cf. United States v. (Under Seal),* 757 F.2d 600, 602 (4th Cir.1985) (vacating as moot district court order disqualifying prosecutor who was exposed to privileged information).[7] The district court declined to hold such a hearing, relying primarily on "the general rules that a grand jury may consider impermissible evidence and that challenges to grand jury subpoenas should not result in mini-trials." We review this determination, an exercise of the court's supervisory power over grand jury proceedings, also under the abuse of discretion standard, *United States v. Nixon,* 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974); *United States v. Berberian,* 767 F.2d 1324 (9th Cir.1985), and we affirm

**6.** Although we were recently told that the term of the grand jury expired June 2, 1989, we do not think the case is moot. While the grand jury formally issued the subpoena giving rise to this dispute, it has been suggested that the real parties in interest are the government (as prosecutor) and the defendant. *Cf. Hawkins v. Superior Court,* 22 Cal.3d 584, 150 Cal.Rptr. 435, 586 P.2d 916, 919 (1978) ("The prosecuting attorney is typically in complete control of the total process in the grand jury room.") In any event, we conclude that these circumstances fall within the "capable of repetition but evading review" exception to the mootness doctrine, at least in cases not covered by the "recalcitrant witness" statute, 28 U.S.C. § 1826(b) (1982), which requires disposition of an appeal from an order of confinement within thirty days of the filing of the appeal. *See In re Grand Jury Proceedings (Larson),* 785 F.2d 629, 631 (8th Cir.1986) ("Because a grand jury's term and its investigations are by their very nature of limited and relatively short duration, it is probable that contempt issues, in the absence of confinement or commitment, 'could not, or probably would not, be able to be adjudicated while fully "live." ' "); *cf. In re Grand Jury Proceedings,* 863 F.2d 667, 669–70 (9th Cir.1988) (exception not applicable in case covered by recalcitrant witness statute).

**7.** A refusal to disqualify a prosecutor at this stage would not itself be reviewable. *See Deaver v. Seymour,* 822 F.2d 66, 71 (D.C.Cir.1987).

the district court's refusal to quash the subpoena on this ground.

 A grand jury's function is, of course, quite different from that of a petit jury. The former is an investigative body generally "unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials." *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974). Although a grand jury may not itself violate a valid privilege, it may consider evidence obtained in violation of the Fourth Amendment, *Calandra,* 414 U.S. at 351–52, 94 S.Ct. at 621–22, or the Fifth Amendment, *Lawn v. United States,* 355 U.S. 339, 350, 78 S.Ct. 311, 318, 2 L.Ed.2d 321 (1958), or that would otherwise be incompetent at trial, *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956) (indictment based solely on hearsay evidence). Grand jury inquiries grounded on information obtained in violation of a constitutional provision do not themselves work an additional wrong; they "are only a derivative use of the product of a past unlawful [action]." *Calandra,* 414 U.S. at 354, 94 S.Ct. at 623.

 To be sure, if the subpoena for the documents were part and parcel of a government scheme to invade Company's attorney-client privilege, it might be thought to be one continuous unlawful or improper series of actions. But if that were so, we would still be presented with only a derivative use of improperly obtained evidence. Even were the district court inclined to disbelieve the government's representations—that its prosecutors before the grand jury were not privy to the six documents the vice president turned over to the government—the court would not be obliged to conduct a hearing into the matter at this stage in the proceedings. Were we to conclude otherwise, we would encourage interruptions and delays in the grand jury process that skilled defense counsel might exploit to "try the prosecution" even before an indictment could issue. "Any holding that would saddle a grand jury with mini-trials and preliminary showings would assuredly impede its

investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *United States v. Dionisio,* 410 U.S. 1, 17, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973); *see also Costello,* 350 U.S. at 363, 76 S.Ct. at 408. Should an indictment ultimately be returned against Company, it may seek the exclusion of improperly obtained evidence. *Calandra,* 414 U.S. at 354 n. 10, 94 S.Ct. at 623 n.10. And, after that indictment, a district court has ample discretion to inquire into any credible claim of prosecutorial misconduct. *See United States v. Omni International Corp.,* 634 F.Supp. 1414, 1440 (D. Md.1986).

We remand the case to the district court for further proceedings in accordance with this opinion.

*It is so ordered.*