MERGENTIME CORPORATION, et al., Plaintiffs,

v.

WASHINGTON METROPOLITAN AREA TRANSPORTATION AUTH-ORITY, Defendant, Counter–Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Counter–Defendant.

Civ. A. No. 89–1055.

United States District Court, District of Columbia.

March 25, 1991.

John F. Myers, Frank, Bernstein, Conaway & Goldman, Bethesda, Md., for plaintiff Mergentime Corp.

Scott E. Ransick, Steptoe & Johnson, Washington, D.C., for plaintiff Perini Corp.

John R. Keys, Jr., Winston & Strawn, Washington, D.C., and Robert S. Fischler, Winston & Strawn, New York City, for counter-defendant Ins. Co. of North America.

Gerard J. Stief, Associate Gen. Counsel, Washington Metropolitan Area Transit Auth., and W. Stanfield Johnson, Crowell & Moring, Washington, D.C., for defendant, counter-plaintiff Washington Metropolitan Area Transp. Auth.

## ORDER

REVERCOMB, District Judge. ·

Plaintiffs Mergentime Corporation and Perini Corporation have moved to compel the defendant Washington Metropolitan Area Transit Authority (WMATA) to produce certain documents withheld on the basis of the attorney/client privilege.[1] The documents sought relate to communica-

---

1. Plaintiffs' Motion to Compel also included a request for other information which had been withheld as attorney work product. WMATA subsequently withdrew its claim of privilege as to this other information and produced the doc-uments requested. Plaintiffs now ask the Court for a reimbursement of its costs in bringing the Motion to Compel as to these documents. Pl. Reply n. 2. The Court will reserve judgment on the issue of costs at this point in the litigation.

tions between WMATA and its counsel concerning the decision to terminate its Shaw and U Street Station contracts with the plaintiffs. Plaintiffs assert that WMATA has waived its privilege as to these materials in two ways. First, the privilege was waived by WMATA's production of four documents reflecting the legal advice of its General Counsel, Robert Polk, on the termination issue. In addition, plaintiffs argue that WMATA waived the attorney/client privilege "by placing into issue the precise subject matter of its counsel's communications—*i.e.*, the validity and propriety of WMATA's contracting officer's decision to terminate the contracts for default." Pl. Motion at 3.

### I. *Waiver by Disclosure*

■ In support of their first argument, the plaintiffs rely on this Circuit's decision in *In re Sealed Case*, 877 F.2d 976 (D.C.Cir. 1989), that disclosure of a document protected by the attorney/client privilege constitutes a waiver of the privilege as to that document and related information. Pl. Memorandum at 24–25. WMATA tries to avoid the harsh subject matter waiver rule of *In re Sealed Case* by stressing the "inadvertent" nature of the disclosure and the fact that the materials disclosed were handwritten notes which contained "no indicia" of confidentiality on their face. Def. Memorandum at 12–13. The Court finds, however, that WMATA's arguments are foreclosed by the clear language of the Circuit Court's decision.

In setting forth the subject matter waiver rule in *In re Sealed Case*, the Circuit Court refused to "distinguish between various degrees of 'voluntariness' in waivers of the attorney-client privilege." 877 F.2d at 980. The Court explained:

> Normally the amount of care taken to ensure confidentiality reflects the importance of that confidentiality to the holder of the privilege. To hold, as we do, that an inadvertent disclosure will waive the

privilege imposes a self-governing restraint on the freedom with which organizations such as corporations, unions, and the like label documents related to communications with counsel as privileged. To readily do so creates a greater risk of "inadvertent" disclosure by someone and thereby the danger that the "waiver" will extend to all related matters, perhaps causing grave injury to the organization. But that is as it should be.

*Id.* Thus, even WMATA's asserted inadvertent production of the handwritten documents at issue here will lead to a waiver of the attorney/client privilege.[2]

■ Once a waiver of the attorney/client privilege is established, the Court must determine the scope of the waiver. As the Circuit Court has recognized, the Court's determination "properly depend[s] heavily on the factual context in which the privilege is asserted." 877 F.2d at 981. In this case, the factual context of the disclosure supports only a narrow waiver of the privilege. The documents produced were *not* the notes of either WMATA's attorney or its contracting officer, who ultimately decided to terminate the contracts at issue; rather, they are the notes of some other WMATA personnel. The documents consist of terse entries reflecting discussions at meetings at which WMATA's counsel was present. Although some of the entries attribute certain comments or information to WMATA's general counsel, Robert Polk, it is not always clear that the subject of the information is legal advice.

The Court finds that the waiver resulting from these notes does not entitle the plaintiffs to the other privileged documents sought. Instead, the Court holds that the waiver only opens the door for the plaintiffs to discover from Mr. Polk whether, in fact, he made the statements reflected in the notes and to discover whether the statements were considered and relied upon by WMATA's contracting officer in

---

2. WMATA's reliance on an earlier case, *In re Sealed Case*, 676 F.2d 793 (D.C.Cir.1982), to suggest that the subject matter waiver rule only applies "[w]hen a party reveals part of a privileged communication in order to gain an advantage in litigation" is misplaced. The Circuit Court's later decision clearly expands the application of the subject matter waiver rule to even inadvertent disclosure of privileged material.

deciding to terminate the Shaw and U Street Station contracts.

## II. *Waiver by WMATA's Placing its Termination Decision into Issue*

■ The plaintiffs have cited numerous cases in support of their argument that WMATA has waived its attorney/client privilege as to advice given by counsel to WMATA concerning its decision to terminate plaintiffs' contracts by placing the termination of the two station contracts into issue in this litigation. The plaintiffs, however, have interpreted the caselaw that they rely upon too broadly.

Unlike the cases of *Byers v. Burleson*, 100 F.R.D. 436 (D.D.C.1983), *PEPCO v. California Union Insurance Company*, No. 88–2091 (D.D.C. Feb. 14, 1990), or *Monsanto Co. v. Aetna Casualty and Surety Company*, No. 88C–JA–118 (Del.Sup.Ct. May 25, 1990), WMATA has not put its attorney's conduct directly at issue in this litigation by raising claims of legal malpractice or by seeking defense costs. Nor have the plaintiffs established that WMATA has sought to use the privilege "in a way that is not consistent with the purpose of the privilege." *United States v. Western Electric Company, Inc.*, 132 F.R.D. 1 (D.D.C.1990). These factual distinctions preclude any reliance on those decisions by this Court.

Nonetheless, plaintiffs argue that WMATA's counsel's advice is "inextricably intertwined with the central issue of this case" and therefore is not protected by the attorney/client privilege. Pl. Reply at 12. The Court, however, cannot accept this rationale, which could basically apply to any business judgment. Short of some additional showing to support a finding that WMATA has placed its attorney's conduct at issue in this case, the Court will not deny WMATA the protection of the attorney/client privilege on this basis.

For the foregoing reasons, the Court grants the plaintiffs' motion in part and will permit plaintiffs (1) to question WMATA's counsel concerning whether he made the statements attributed to him in the documents which were inadvertently produced and (2) to question WMATA's contracting officer concerning whether he considered and relied upon any such statements in deciding to terminate the Shaw and U Street Station contracts.