**In re SEALED CASE.**

No. 94–3019.

United States Court of Appeals, District of Columbia Circuit.

Argued May 17, 1994.

Decided July 22, 1994.

Before EDWARDS, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellant[1] is the target of a grand jury investigation into allegations that he and others conspired to engage in commercial transactions with the Libyan government in violation of federal law. During conversations with an assistant United States Attorney in connection with the investigation, the appellant disclosed that he had consulted the Lawyer with respect to his transactions with the Libyan government. The United States subpoenaed the Lawyer to testify before the grand jury and to produce all documents relating to consultations with the appellant and others. The Lawyer asserted the attorney-client privilege and the Government moved to compel. The district court granted the motion to compel; the appellant argues that we should reverse the district court because: (1) the Lawyer's files are protected by the work product doctrine; (2) the joint interest privilege bars disclosure of the attorney-client communications; and (3) the district court erred in determining that the appellant's waiver of the attorney-client privilege extended to all conversations between the Lawyer and him.

We reverse the district court's conclusion that the work product privilege does not protect the Lawyer's files and remand for the court to conduct an *in camera* review of the files to determine the applicability of the privilege. We also remand for the district court to address the applicability of the common interest privilege to the appellant's conversations with the Lawyer. Finally, we affirm the district court's waiver holding.

## I. BACKGROUND

Sometime before September 1992, the appellant, an American citizen, and Z, a citizen of Great Britain, allegedly entered into a consulting agreement with the Libyan government. Under the terms of the agreement, the Libyan government agreed to pay the appellant and Z a substantial sum of money for their efforts to secure the lifting of

1. The record in this case was sealed below under D.C. District Court Rule 302, which provides that "[a] motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury, all other papers filed in support of or in opposition to such motion or application, and all orders entered by the court in connection therewith, shall be filed under seal." The record remains sealed here under D.C. Circuit Rule 10(c), which provides that "[a]ny portion of the record that was placed under seal in the district court ... shall remain under seal in this Court unless otherwise ordered." Accordingly, we refer to the non-governmental parties as "the appellant," "the Lawyer" and "the foreign company."

sanctions imposed by the United States and the United Nations on Libya as a result of the bombing of Pan American Flight 103 in December 1988. The agreement required the Libyan government to pay $8 million annually to the foreign company created by the appellant and Z for the purpose of receiving the Libyan payments.

In 1993, the appellant learned that he was the target of a grand jury investigation into his alleged transactions with Libya.[2] The appellant and his counsel agreed to meet with an assistant United States Attorney and an agent of the United States Department of the Treasury (Treasury) as part of a plea proffer. Before the appellant's meeting, he signed an agreement providing that: "The government may use against [the appellant] information directly or indirectly derived from statements he makes or other information he provides during the interview(s), and may pursue and use against him the fruits of any investigative leads suggested by such statements or other information." J.A. at 9. During his interview, the appellant disclosed that he and Z met with the Lawyer in Washington, D.C. in September 1992 in connection with the proposed consulting agreement between the foreign company and the Libyan government.

The appellant did not assert the attorney-client privilege regarding his discussions with the Lawyer; on the contrary, he recounted the consultations in some detail. According to his account, the appellant told the Lawyer that he had travelled to Libya and received funds from the Libyan government in payment for services rendered. The Lawyer advised the appellant that his actions violated federal criminal statutes and regulations. Although the Lawyer counseled the appellant against continued involvement, the appellant told the Lawyer that he intended to conduct further transactions with the Libyan government. The Lawyer provided the appellant with copies of the Libyan Sanctions Regulations and other information obtained from Treasury and advised the appellant that he had to register under the Foreign Agents

Registration Act, 22 U.S.C. §§ 611 *et seq.* The appellant admitted to the Government that he used the information he received from the Lawyer to continue his transactions with the Libyan government.

The appellant also told the Government that he met with the Lawyer again after the September 1992 meeting. He asked the Lawyer to prepare a contract between the foreign company and the Libyan government to "cover" the proposed consulting agreement. The Lawyer declined to do so and the contract was eventually prepared by a lawyer in Geneva, Switzerland. The Lawyer did, however, draft preliminary papers and reviewed documents prepared by the Geneva lawyer, including the final contract. The appellant admitted that he and others received funds from Libya pursuant to the contract.

On January 21, 1994, the Government subpoenaed the Lawyer to appear before the grand jury to testify and to produce "[a]ny and all documents relating to and/or generated as a result of discussions and/or consultation with [the appellant and Z] ... and/or any representative or agent of [the foreign company]." J.A. at 8. The Lawyer notified the Government that he refused to comply with the subpoena, asserting the attorney-client privilege. The Government immediately filed a motion to compel. On March 7, 1994, the district court granted the Government's motion to compel. On March 10, 1994, the district court denied the appellant's requested stay pending appeal. The appellant then filed a notice of appeal in district court and an emergency motion for stay pending appeal in this court. On March 14, 1994, the Government filed an emergency motion for summary affirmance. On March 16, 1994, we granted the appellant's motion, denied the Government's motion and set an expedited briefing schedule.

## II. WORK PRODUCT PRIVILEGE

 The appellant argued below that the Lawyer's files constitute work product.

2. The agreement is alleged to have been entered into in violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1701, the Libyan Sanctions Regulations, 31 C.F.R. §§ 550 *et seq.*, and 18 U.S.C. § 371—all of which prohibit commercial transactions with the government of Libya.

The district court rejected his argument, concluding that "[the Lawyer], through counsel, has failed to assert that any information contained in his file relating to this matter was prepared in anticipation of litigation." J.A. at 8. We first conclude that the appellant adequately asserted the work product privilege below. During oral argument on the Government's motion to compel, the Lawyer's counsel informed the court that:

> I also wanted to let you know, with respect to the work product question, I think there is a viable work product argument, given the circumstances under which [the Lawyer] was consulted.... If [the appellant] has a work product privilege independent of [the Lawyer]'s, then I understand he is asserting it....

J.A. at 58. The work product privilege may be asserted not only by a lawyer, but also by his client. *See In re Sealed Case,* 676 F.2d 793, 812 n. 75 (D.C.Cir.1982) ("work product privilege belongs to the lawyer as well as the client"). The appellant also expressly asserted the privilege. *See* Response to Motion to Compel at 12. Accordingly, the work product privilege was adequately asserted below by both the Lawyer and the appellant.

■ In rejecting the appellant's assertion of the privilege, the district court indicated that the privilege was inapplicable because no grand jury investigation had commenced at the time. J.A. at 17, 19.[3] We disagree. The work product privilege protects any material obtained or prepared by a lawyer "in the course of his legal duties, provided that the work was done with an eye toward litigation." *In re Sealed Case,* 676 F.2d at 809. Even though the grand jury investigation had not begun when the Lawyer met with the appellant and prepared his file, he may well have had an eye toward litigation. *See generally In re Grand Jury Investigation,*

599 F.2d 1224, 1229 (3d Cir.1979) (lawyer's investigation into "suspected criminal investigations" generally sufficient to trigger work product privilege); 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024, at 197–98 (1970) ("Some cases [interpreting the work product privilege] have attributed significance to whether a document was obtained before or after litigation was commenced, but this cannot be sound. Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced."). Accordingly, the district court erred as a matter of law in holding the privilege inapplicable in the absence of an ongoing grand jury investigation.

In determining whether the materials in the Lawyer's files are protected by the work product privilege, "the testing question is whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Senate of Puerto Rico v. United States Dep't of Justice,* 823 F.2d 574, 586 n. 42 (D.C.Cir.1987). The question cannot be answered without knowing the contents of the Lawyer's files. Accordingly, we remand to the district court so that it can conduct an *in camera* review of the Lawyer's files and determine whether the privilege applies to the documents contained therein.[4]

## III. COMMON INTEREST PRIVILEGE

■ The appellant also argues that the common interest privilege bars disclosure of his communications with the Lawyer. Specifically, he contends that he, Z and the foreign company share an attorney-client privilege regarding their consultations with the Lawyer. Therefore, he argues, any waiver of the privilege that he made was ineffec-

---

**3.** The court explained: "[The Lawyer], through counsel, has failed to assert that any information contained in his file relating to this matter was prepared in anticipation of litigation. *See also* Part II.A. above." J.A. at 19. Part II.A. concluded that the joint defense privilege was inapplicable because "no grand jury investigation had commenced, thus neither [the appellant] nor [the foreign company] were under the onus of litigation." J.A. at 17.

**4.** At oral argument, the appellant asserted that he stands ready to prepare an index to the Lawyer's files to facilitate review.

Because the district court held that the appellant had waived his privilege in his communications with the Lawyer and that no joint interest or work product privilege existed in this case, it did not discuss the crime-fraud exception. On remand, of course, the Government may continue to press this argument.

tive because a jointly held privilege can be waived only by all of its holders. In response, the Government claims that the appellant waived his common interest privilege argument by failing to raise it below. We disagree. Although the Government is correct in noting that the appellant concentrated his argument on the joint defense privilege in district court,[5] he also asserted the common interest privilege. In opposing the Government's motion to compel, the appellant's counsel argued:

> In terms of the joint defense issue, your honor—and I know the court knows this—there's a common law privilege, not pertaining to joint defense agreements per se—joint defense agreements are a new phenomenon—*but there's a common law privilege about common interests. If clients have common interests, the privilege applies. And that's what we're talking about here.*

J.A. at 53 (emphasis added).

 The common interest privilege protects communications between a lawyer and two or more clients regarding a matter of common interest. *See In re Auclair*, 961 F.2d 65, 69 (5th Cir.1992) (privilege applies if "persons ... consult an attorney together as a group with common interests seeking common representation"); 1 Scott N. Stone & Robert K. Taylor, *Testimonial Privileges* § 1.21, at 1–54 (2d ed. 1993) ("Where the same attorney represents two or more clients having a common interest, confidential communications made by those clients to the common lawyer will be protected from disclosure to third parties."); 8 John H. Wigmore, *Evidence* § 2328, at 639 (McNaughton Rev. 1961) ("Where the consultation was held by several clients jointly, the waiver should be joint for joint statements, and neither could waive for the disclosure of the other's state-

ments; yet neither should be able to obstruct the other in the disclosure of the latter's own statements."). Inherent to the privilege is the consultation of *two or more* individuals or entities with counsel. The Government argues that no common interest privilege exists because the appellant controls the foreign company to such an extent that the latter cannot be considered a separate entity for the purpose of the common interest privilege. The record is silent on this issue. Accordingly, we remand to the district court to determine if the foreign company is a separate entity from the appellant.[6] If the district court decides that the appellant and the foreign company are indeed separate, it must then decide whether the appellant has standing to assert the foreign company's privilege, having waived his own. If he has standing, the district court can then determine the applicability of the privilege.

## IV. SCOPE OF WAIVER

 Finally, the appellant argues that the district court erred in holding that his waiver extended to all conversations between the Lawyer and him "relating to the same subject matter, specifically including documents in the case files." J.A. at 18. Our review of the district court's conclusion is deferential: "Since ... determinations [of the waiver's scope] properly depend heavily on the factual context in which the privilege is asserted, we will not disturb a district court's decision as to the question unless it can be shown the court abused its discretion." *In re Sealed Case*, 877 F.2d 976, 981 (D.C.Cir.1982). In our view, the district court did not abuse its discretion. As we have previously held, "waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter." *Id.* Because we con-

---

5. The joint defense privilege protects communications between two or more parties and their respective counsel if they are engaged in a joint defense effort. *Metro Wastewater Reclamation v. Continental Casualty Co.*, 142 F.R.D. 471, 478 (D.Colo.1992). The party asserting the privilege must show: "(1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived." *In re Bevill, Bresler & Schulman Asset Management*

*Corp.*, 805 F.2d 120, 126 (3d Cir.1986). The district court rejected the joint defense privilege because there was no "actual or potential litigation" or strong possibility thereof at the time the appellant consulted the Lawyer. J.A. at 16–17.

6. The Lawyer denies that Z was his client in any individual capacity. J.A. at 57. Rather, Z was advised only as a representative of the foreign company. *Id.* at 57–58.

strue the subpoena to seek information relating only to matters that the appellant disclosed in his plea discussions, the material sought has an obvious relationship to the subject matter of his admissions. Accordingly, we affirm the district court's determination as to the scope of the appellant's waiver.

*So ordered.*