**In re UNITED MINE WORKERS OF AMERICA EMPLOYEE BENEFIT PLANS LITIGATION.**

No. MDL 886.
Misc. A. No. 91–386.

United States District Court,
District of Columbia.

Dec. 9, 1994.

See also, 156 F.R.D. 507.

Julia Penny Clark (Lead Counsel), Bred-
hoff & Kaiser, Washington, DC, for plaintiffs.

Dannie B. Fogelman, Coleman, Coxon, Pe-
nello, Fogelman & Cowan, P.C., Washington,
DC, for defendants.

## *MEMORANDUM OPINION*

THOMAS F. HOGAN, District Judge.

■ Pending before the Court are defen-
dants' and plaintiffs' motions to reconsider
Magistrate Judge Kay's Order of April 19,
1994.[1] Defendants argue that Magistrate
Judge Kay wrongly decided that (1) "the
waiver is to be narrowly construed and limit-
ed to those other documents addressing the
same specific subject matter as the docu-
ments already produced" and (2) plaintiffs
have not yet put their knowledge at issue.
Plaintiffs argue in their motion to reconsider
that Magistrate Judge Kay wrongly decided
(1) to extend the subject-matter waiver gen-
erated by disclosure of certain privileged
documents to attorney work product; (2) to
require the Trusts to produce legal memo-
randa attached to the trustees' meeting min-
utes; and (3) to hold that the common inter-
est rule does not apply to communications
between the Trusts, the BCOA, and the
UMWA. Under 28 U.S.C. § 636(b)(1)(A),
this Court may grant a motion to reconsider
a magistrate judge's rulings on pretrial mat-
ters when the rulings are clearly erroneous
or contrary to law. Having carefully consid-
ered all of the parties' arguments, the Court
shall deny defendants' motion to reconsider
and shall grant plaintiffs' motion to reconsid-
er.

### I. *Defendants' Motion to Reconsider*

### A. Scope of Subject Matter Waiver

■ Defendants first argue in their motion
to reconsider that Magistrate Judge Kay
erred in holding that plaintiffs' waiver of the
attorney-client and work product privileges
"is to be narrowly construed and limited to
those other documents addressing the same
*specific* subject matter as the documents al-
ready produced." Mem.Or. at 1–2. Defen-

---

1. On June 24, 1994, this Court denied, in part,
plaintiffs' motion to reconsider Judge Kay's relat-
ed Order of April 14, 1994. This Court's Memo-
randum Opinion of June 24, 1994, directed Mag-
istrate Judge Kay to perform a full *in camera*
review of the documents contained in boxes 594–
96 ("Malamud files").

dants contend this standard deviates from the standard that governs subject-matter waivers in this Circuit.

■ In *In re Sealed Case,* 877 F.2d 976, 981 (D.C.Cir.1989), the United States Court of Appeals for the District of Columbia Circuit "clearly expand[ed] the application of the subject-matter rule to even inadvertent disclosure of privileged material," *Mergentime Corp. v. Washington Metro. Area Transp. Auth.,* 761 F.Supp. 1, 2 n. 2 (D.D.C.1991) (J. Revercomb), and held that a subject matter waiver extends to "all other communications relating to the same subject matter." *In re Sealed Case,* 877 F.2d at 976, 981 (quoting *In re Sealed Case,* 676 F.2d 793, 809 (D.C.Cir. 1982)). However, the Court of Appeals also reaffirmed the principle that a trial court retains broad discretion in deciding the appropriate scope of a waiver. *Id.* at 981 (citing *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), for the proposition that "decisions that resist application of general rules and depend on factual situations are appropriately reviewed under abuse of discretion standard").

■ This Court affirms Magistrate Judge Kay's decision. In the Court's view, Magistrate Judge Kay's ruling limiting the scope of the alleged waiver to all other communications relating to the "same *specific* subject matter," as opposed to "the same subject matter," as this Circuit has repeatedly held, does not diverge from this Circuit's precedent. Defendants have categorized the documents at issue in extremely broad terms, such as, documents relating to the "evergreen clause," "withdrawal liability," and "nonconforming agreements." The case law in this Circuit grants Magistrate Judge Kay the discretion to define the subject-matter of the disclosed documents narrowly to prevent the scope of the subject-matter waiver from being unduly broad. *See Mergentime Corp.,* 761 F.Supp. at 2 (finding that the factual context of the disclosure supported only a narrow waiver of the attorney-client privi-

lege); *Daniels v. Hadley Memorial Hosp.,* 68 F.R.D. 583, 587 n. 8 (D.D.C.1975) (stating that "[the scope of the attorney-client waiver] may not thereby extend to other communications, even if they may in some way be related"). Therefore, the Court shall affirm Magistrate Judge Kay's ruling and will review Magistrate Judge Kay's future determinations relating to the scope of the alleged subject-matter waiver only for abuse of discretion.

### B. Knowledge at Issue

Defendants also argue that Magistrate Judge Kay erred in holding that the Funds "have not yet" placed their knowledge at issue in this case, and therefore have not waived any privileges on that basis. Defendants claim that the Funds' repeated representations to the Court and their prior inconsistent conduct—in particular, their assessment of withdrawal liability against employers who were candidates for evergreen liability, have placed the Funds' knowledge at issue.

Having reviewed the arguments and authorities set forth by the parties in their pleadings and during the hearing this Court conducted on June 2, 1994, the Court agrees with Magistrate Judge Kay and finds that the trustees have not yet placed their knowledge at issue in the consolidated cases.

### II. *Plaintiffs' Motion to Reconsider*

### A. Extension of Subject–Matter Waiver to Attorney Work Product

Plaintiffs argue that Magistrate Judge Kay erred in extending the subject-matter waiver generated by the disclosure of certain privileged documents to documents constituting attorney work product as well as attorney-client communications.[2] Plaintiffs assert that attorney work product is entitled to a heightened level of protection, and a subject-matter waiver generally does not extend to attorney work product. Having carefully reviewed

---

2. In his Memorandum Order of April 19, 1994, Magistrate Judge Kay found that:

> The Funds waived the attorney-client or work-product privilege by the selected, voluntary production of allegedly privileged documents,

but the waiver is to be narrowly construed and limited to those other documents addressing the same *specific* subject matter as the documents already produced.

Mem.Or. at 2–3 (emphasis in original).

this issue, the Court finds that plaintiffs are correct.

■ It is well settled that any disclosure of documents inconsistent with the confidential nature of the attorney-client relationship waives the attorney-client privilege not only as to the documents actually disclosed, but also as to all other communications related to the same subject matter. *In re Sealed Case,* 877 F.2d at 980–81; *In re Sealed Case,* 676 F.2d at 818; *Chubb Integrated Sys. v. National Bank of Washington,* 103 F.R.D. 52, 63 (D.D.C.1984). It seems equally clear in this Circuit that the disclosure of documents protected by the attorney work product privilege waives the protections of the attorney work product privilege as to the documents disclosed. *Wichita Land & Cattle Co. v. American Federal Bank,* 148 F.R.D. 456, 460–61 (D.D.C.1992). However, the parties dispute whether such a disclosure constitutes a waiver of the attorney work product privilege as to *other* work product documents addressing the same subject matter that have not been disclosed.

The defendants cite *In re Sealed Case,* 877 F.2d at 980–81, *In re Sealed Case,* 676 F.2d at 809, 817–18, 823–24, and *United States v. Western Elec. Co.,* 132 F.R.D. 1, 2–3 (D.D.C. 1990) for the proposition that voluntary disclosures constitute waivers of both the attorney-client and work product privileges for all other documents relating to the same subject matter. Def.'s Resp. at 1. However, none of these cases stand for such a broad proposition. Neither *In re Sealed Case,* 877 F.2d at 980–81, nor *Western Elec.,* 132 F.R.D. at 2–3, directly addresses a subject-matter waiver of attorney work product. *In re Sealed Case* holds only that an inadvertent disclosure waives the attorney-client privilege and does not address the attorney work product privilege. 877 F.2d at 980–81. *Western Electric* addresses the at-issue waiver doctrine and concludes that because a privilege holder placed its counsel's actions at issue by claiming good faith reliance, it was precluded from asserting the privilege as to any documents that undermined the claim of good faith reliance while producing work product that support this claim. 132 F.R.D. at 2–3. This Circuit did extend a subject-matter waiver to

work product in *In re Sealed Case,* 676 F.2d at 818, but that holding appears to have been limited to the unique facts of the case.

In *In re Sealed Case,* 676 F.2d at 818, the Court of Appeals held that a corporation that had voluntarily disclosed work product to the Securities and Exchange Commission in the hope of avoiding an enforcement action had waived its right to claim work product privilege as to the remainder of its work product on the same subject. 676 F.2d at 817. In so holding, the Court of Appeals stated:

> We do not consider whether we would imply a waiver in other types of litigation for all of Company's privileged files relating to the report. But the combination of factors in this case, including the fact that some of the documents impeach the veracity of Company's purported full disclosure, makes it inconsistent with the purposes of the work product privilege to deny grand jury access to these documents.

*Id.*

Plaintiffs cite *Chubb Integrated Sys.* to support their argument that the Court of Appeals in *In re Sealed Case* "specifically limited its holding to the facts of the case." 103 F.R.D. at 64. In particular, plaintiffs contend that the Court of Appeals' holding was based on the fact that the corporation had attempted to seek a tactical advantage by disclosing certain privileged documents. Unlike the corporation in *In re Sealed Case,* plaintiffs note that the Trusts never entered an agreement to disclose their attorneys' work product; nor did the Trusts deliberately disclose privileged documents in the hope of obtaining a strategic or tactical advantage in the evergreen litigation. Plaintiffs assert that the disclosed documents at issue are, without exception, unhelpful to the Trusts' position. The Court agrees that *In re Sealed Case* does not resolve the question of subject-matter waiver of the attorney work product privilege.

There appears to be substantial authority for the proposition that a waiver of the attorney work product privilege as to particular documents does not extend to other documents addressing the same subject matter. *See Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1222–23 (4th Cir.1976) ("broad

concepts of subject matter waiver analogous to those applicable to claims of attorney-client privilege are inappropriate when applied to Rule 26(b)(3)"); *Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 16 (D.Mass. 1993) (even if inadvertent disclosure of one group of documents constituted waiver with respect to those documents, no basis for subject matter waiver); *Grunman Aerospace Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84, 90 (E.D.N.Y.1981) ("[d]isclosure to an adversary waives the work product protection as to items actually disclosed"); 8 Wright & Miller, Federal Practice and Procedure § 2024 at 209 (1970) ("But disclosure of some documents does not destroy work product protection for other documents of the same character"); Robert J. Franco & Michael E. Prangle, *The Inadvertent Waiver of Privilege*, 26 Tort & Ins. L.J. 637, 660 (1991) ("with regard to documents covered by the work product privilege, waiver of the privilege as to one such document will not lead to a subject matter waiver"); Anne G. Bruckner–Harvey, Comment, *Inadvertent Disclosure in the Age of Fax Machines: Is the Cat Really Out of the Bag?* 46 Baylor L.Rev. 385, 394 (1994) ("The subject matter waiver rule does not extend to a document protected by the work product privilege"). The basis for most, if not all, of this authority is *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1190–91 (D.S.C.1975), where Judge Hemphill stated:

> The subject matter waiver doctrine applies only to attorney-client privilege claims and not to work product immunity claims. The distinction, in the eyes of this court, is based on the practical application of such a doctrine to work product documents. If one work product document is either voluntarily or inadvertently produced from either terminated or pending litigation, where does the waiver end? If a subject matter waiver of a work product immunity claim is recognized as a doctrine of law, harsh results will necessarily follow, conceivably causing wholesale production of all work product documents from either a terminated or pending lawsuit whenever production of any work product document is considered a waiver. The net effect of such a rule would be a great reluctance to produce *any* work product documents for fear that it might waive the immunity as to *all* similar documents. Such a result is not consonant with the need for economy of judicial time and the avoidance of burdening the courts with in-camera inspections of all conceivably privileged documents.

> Such a disastrous consequence does not befall a litigant whenever it either voluntarily or inadvertently produces one privileged attorney-client communication because such production would constitute a waiver of only the corresponding communications relating to the responses to and requests for, legal advice on the same subject.

> Thus, the rule of subject matter waiver for privileged attorney-client communications is manageable whereas a similar rule for work product documents is not manageable. As a result, the former rule is recognized by this court while the latter rule will not be adopted.

*Id.* at 1190 (emphasis in original).

Despite this authority, defendants argue that the law in this Circuit is clear that *any* disclosure to one's adversary is a waiver of the attorney work product privilege. In support of this position, defendants rely primarily on Judge Lamberth's opinion in *Wichita Land & Cattle Co.*, 148 F.R.D. at 460–61. Discussing the work product issue, Judge Lamberth stated:

> There are instances where disclosure of attorney work product to third parties will not waive the protection, but where disclosure to an adversary in litigation constitutes a waiver of attorney-client privilege, it also effects a waiver of the work product rule.

*Id.*

Although it may be possible to read this statement to mean that a disclosure of documents protected by the attorney work product constitutes a subject-matter waiver, the Court does not find that such a reading is appropriate. First, it is clear that any statements in *Wichita Land & Cattle Co.* related to subject-matter waiver are dicta because Judge Lamberth was only faced with a motion to compel the production of two docu-

ments. *Id.* at 456–57. Second, other than the expressly limited holding of *In re Sealed Case*, 676 F.2d at 817, there is no additional authority that would support the defendants' broad interpretation of Judge Lamberth's opinion. In fact, none of the authorities cited by Judge Lamberth discuss the issue of subject-matter waiver of the attorney work product privilege. To the extent that *Wichita Land & Cattle Co.* could be interpreted as holding that a disclosure of privileged documents waives the work product privilege as to those specific documents *and* to other work product documents still in the possession of the party asserting the privilege, this Court disagrees.

■ Creating a subject-matter waiver of the attorney work product privilege in this case would raise the precise concerns that Judge Hemphill raised in *Duplan Corp.*, 397 F.Supp. at 1090. Additionally, the Court notes that finding a subject-matter waiver here would be inconsistent with the purposes of the attorney work product privilege. The attorney work product privilege exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1298 (D.C.Cir.1980). The attorney-client privilege, on the other hand, exists to protect a confidential relationship. *Id.* Because any violation of the confidential attorney-client relationship is inconsistent with its purposes, courts will treat a disclosure of confidential information as a waiver of the privilege as to all communications relating to the same subject matter. *In re Sealed Case*, 877 F.2d at 980–81. This distinction between the purposes of the two privileges suggests that a subject-matter waiver of the attorney work product privilege should only be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed. *In re Sealed Case*, 676 F.2d at 817.

■ Unlike the *In re Sealed Case*, 676 F.2d at 817, this is not a situation where a party expressly agreed to disclose attorney work product or where it deliberately disclosed documents in an attempt to gain a tactical advantage. In fact, the documents that have been disclosed are unhelpful to plaintiffs' position. A complete subject-matter waiver would probably yield additional attorney work product that would provide the defendants with a substantial strategic windfall. Where, as here, the law does not mandate a subject-matter waiver and such a waiver is more likely to undermine the adversary system than to promote it, it was contrary to law for the Magistrate Judge to extend the waiver of attorney work product to encompass previously undisclosed documents related to the same subject matter. Accordingly, the Court reverses Magistrate Judge Kay's April 19, 1994, ruling with respect to this issue.

## B. Production of Legal Memoranda

Plaintiffs argue Magistrate Judge Kay erred by requiring the Trusts to produce legal memoranda attached to the trustees' meeting minutes. Plaintiffs contend these memoranda were not regularly shared with the BCOA and/or the UMWA liaisons. The declarations of General Counsel William F. Hanrahan and David W. Allen and the deposition testimony of the BCOA liaison, Morris Feibusch, suggest that such attachments were not generally supplied to the BCOA or to the UMWA. Defendants point to three memoranda found in the files of Bethlehem and Peabody to support their claim that the minutes and attachments were made available to third parties. Based on the record currently before the Court, the Court will not require the Trusts to disclose all privileged documents attached to the minutes. The Court finds that Magistrate Judge Kay's ruling was clearly erroneous. Accordingly, the Court holds that the waiver of privilege does not extend beyond those memoranda previously disclosed.

## C. Common Interest Rule

■ Finally, plaintiffs argue that Magistrate Judge Kay erred in holding that the common interest rule does not apply to communications between and among the Trusts,

the BCOA and the UMWA.[3] The "common interest rule" provides that parties with shared interests in actual or potential litigation against a common adversary may share privileged information without waiving their right to assert the privilege. *American Tel. and Tel. Co.*, 642 F.2d at 1299.

Plaintiffs argue that the common interest rule should apply to communications between and among the Trusts, the BCOA and the UMWA. Plaintiffs claim that when the evergreen cases were first filed, the Trusts and the UMWA shared a common interest in litigation enforcing the trust documents, and the evergreen clause in particular. Plaintiffs note that at the beginning of this litigation, the UMWA sought to intervene in support of the Trusts' position. The Court denied the UMWA's motion to intervene on the ground that there was no divergence between the interests of the Trusts and the UMWA, but allowed the UMWA to participate as an *amicus curiae*. Thus, plaintiffs argue, although the interests of the Trusts and UMWA later diverged, the communications between the Trusts and the UMWA that took place when the evergreen litigation was being planned and in its initial stages nevertheless should be protected by the common interest rule.

Plaintiffs further claim the Trusts and the BCOA share a common interest in enforcing the trust documents and the evergreen clause against employees that have not signed any agreement with the UMWA. Plaintiffs state that attorneys for the Trusts and the BCOA have regularly consulted about the evergreen litigation and that the BCOA has appeared as an *amicus curiae* supporting the position of the Trusts. To further support their claim that the BCOA and the Trusts have common interests, plaintiffs point to Pittston's pending suit against the BCOA. Additionally, the BCOA notes in its *amicus curiae* brief that it previously has supported the Trusts' efforts to enforce trust documents. *See, e.g., UMWA v. Nobel*, 720 F.Supp. 1169 (W.D.Pa.1989), *aff'd*, 902 F.2d 1558 (3d Cir.1990), *cert. denied*, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 212 (1991). In *Nobel*, the Trusts and the BCOA routinely consulted with one another about litigation strategy, and it does not appear that the opposing litigants ever argued that the joint defense or common interest rule did not apply to the BCOA and the trustees.

Defendants contend that Magistrate Judge Kay's ruling is correct because general or mutual interests outside litigation are not sufficient for the common interest rule to apply. Defendants argue that the rule applies only to co-parties in litigation or parties who anticipate litigation against a common adversary. Defendants assert that the UMWA and the BCOA are distinct entities, with different duties and interests, and neither ever contemplated joining this litigation as a party. Defendants note that although the UMWA claims the right to negotiate non-conforming agreements despite the evergreen clause, the BCOA now opposes such agreements (although the BCOA acquiesced in their execution in earlier years). Additionally, defendants point out that plaintiffs initially concluded it was their duty to accept such agreements but later decided to reject that position. Defendants thus argue that any common interest is too general to protect communications from disclosure.

The key case upon which both parties rely is *American Tel. and Tel. Co.*, 642 F.2d at 1298–1300. In that case, both MCI and the United States government brought separate antitrust actions against AT & T. The Court of Appeals held that disclosure of work product by MCI to the government did not result in a waiver of work product privilege. The court stated, " 'common interests' should not be construed as narrowly limited to co-parties." *Id.* at 1299. "So long as transferor and transferee anticipate litigation against a common adversary on the same or similar issues, they have a strong common interest in sharing the fruit of the trial preparation efforts." *Id.*[4]

---

**3.** Magistrate Judge Kay's ruling requires plaintiffs to disclose two categories of documents—ordinary and special communications. Plaintiffs object only to the latter category, and only to communications in furtherance of common interests in actual or anticipated litigation.

**4.** The parties appear to assume that the common interest rule is equally applicable to communica-

After considering plaintiffs' arguments, the Court finds that Magistrate Judge Kay's broad holding on this issue was clearly erroneous. It is clear that the Trusts, the BCOA, and the UMWA have not always shared common interests; their interests have diverged at different times. However, the common interest rule is concerned with the relationship between the transferor and the transferee at the time that the confidential information is disclosed. The fact that the parties' interests have diverged over the course of the litigation does not necessarily negate the applicability of the common interest rule. *See United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp.Emer.Ct. App.1985) (disclosure of documents during unsuccessful merger attempt between entities that later became adversaries did not constitute work product waiver because documents were disclosed pursuant to merger agreement that was in parties' common interest at the time disclosure was made); *In re LTV Sec. Litig.*, 89 F.R.D. 595, 603–04 (N.D.Tex.1981) (corporation and its accountants allowed to protect prior shared confidences from shared disclosure to third parties where communications made on issues involving common interests, even though parties might later become antagonists in litigation); *Visual Scene, Inc. v. Pilkington Bros.*, 508 So.2d 437 (Fla.Dist.Ct.App.1987) (applying common interest rule "notwithstanding that in another respect VSI and Metro are adversaries in the litigation and aligned as plaintiff and defendants respectively"). Thus, some of the communications exchanged among the Trusts, the BCOA, and the UMWA may have been subject to the common interest rule depending on the timing and circumstances of the exchanges of information. The broad language in Magistrate Judge Kay's Order provides no indication as to whether the Magistrate Judge considered the possibility that the common interest rule might apply to some communications but not apply to others.

The Court will remand this issue for further consideration by the Magistrate Judge. The Magistrate Judge should consider whether plaintiffs can establish that any particular privileged documents were transferred in anticipation of litigation against a common adversary on the same issue. *American Tel. and Tel. Co.*, 642 F.2d at 1299.[5] In making his evaluation, the Magistrate Judge should also consider whether any efforts were taken to maintain the confidentiality of the transferred materials.[6] If the Magistrate Judge finds that the Trusts and/or their counsel shared privileged infor-

tions protected by the attorney-client privilege and those protected by the attorney work product privilege. However, the holding in *American Tel. and Tel.* only addressed the common interest doctrine in the context of the work product privilege. *Id.* In fact, it is possible to read some language in the *American Tel. and Tel.* case (especially in light of *In re Sealed Case*, 877 F.2d at 980–81) to suggest that the common interest rule is inapplicable to situations where information protected by the attorney-client privilege is disclosed to a third party because any such disclosure (even to an individual or entity with a common interest) would be inconsistent with the confidentiality inherent in the attorney-client relationship. None of the litigants have made such an argument and the Court is unaware of any authority that holds that the common interest rule is not applicable to attorney-client communications. There is authority in other jurisdictions that suggests that the common interest rule applies to both privileges. *See Western Fuels Ass'n v. Burlington N.R.R.*, 102 F.R.D. 201, 203 (D.Wyo.1984). Therefore, the Court will assume that the common interest rule is equally applicable to both types of communications. *See In re Sealed Case*, 29 F.3d 715, 718–19 (D.C.Cir.1994)

("common interest privilege protects communications between a lawyer and two or more clients regarding a matter of common interest"). However, it is possible that the precise scope of the common interest rule will vary as applied to each privilege because of the differing purposes of the privileges.

5. Of course, the fact that the BCOA and the UMWA may not have been actual parties to litigation at the time that privileged communications were transferred is not dispositive. *Id.* If the parties anticipate potential litigation against a common adversary, this may trigger the common interest rule, even if the transferor and transferee do not later become co-parties in actual litigation.

6. In both *American Tel. and Tel. Co.* and *Gulf Oil Co.*, the courts indicated that disclosures made pursuant to a guarantee of confidentiality strengthened the case against waiver of the privilege. While a guarantee of confidentiality is not a prerequisite of the common interest rule, the existence of some efforts to protect confidentiality would bolster an argument that a privilege has not been waived.

mation while consulting with the BCOA or with the UMWA and/or their counsel at a time when the parties shared a common interest in actual or anticipated litigation, the Magistrate Judge may find that the common interest rule prevents the waiver of the applicable privilege. However, absent such a finding, the disclosure of privileged communications to third parties may serve to waive the privilege.

## CONCLUSION

For the above reasons, the Court denies defendants' motion to reconsider and grants plaintiffs' motion to reconsider. The Court further directs the Magistrate Judge to reconsider whether the common interest rule applies to any of the communications between and among the Trusts, the BCOA, and the UMWA.

## *ORDER*

After carefully considering defendants' and plaintiffs' motions to reconsider Magistrate Judge Kay's Order of April 19, 1994, it is this 9th day of December, 1994, hereby

ORDERED that, for the reasons expressed in the Court's Memorandum Opinion, defendants' motion to reconsider is DENIED; and it is further

ORDERED that, for the reasons expressed in the Court's Memorandum Opinion, plaintiffs' motion to reconsider is GRANTED; and it is further

ORDERED that:

(1) the subject-matter waiver does not extend to attorney work product;

(2) the Trusts are not required to produce legal memoranda that were not previously disclosed; and

(3) Magistrate Judge Kay shall reconsider whether the common interest rule applies to any individual privileged documents.